STATE v. TYLER COUNTY STATE BANK et al. (No. 1091.)

(Court of Civil Appeals of Texas. Beaumont. April 16, 1924. Rehearing Denied May 7, 1924.)

1. Depositaries ⟐10—Acceptance of bank cashier's checks in payment of tax collector's account discharged bank as depository.

Where state treasurer had theretofore accepted from tax collector bank's cashier's checks in payment of tax collector's account, and in instant case accepted cashier's checks issued in payment of collector's official checks for funds of county deposited with bank, and received and accepted by the collector in payment, depository liability of bank was discharged, and it became liable on its issued checks only in character as bank.

2. Banks and banking ⟐63½—Order of commissioner of insurance and banking approving status of claim against bank not collaterally attacked.

Conceding that state, having accepted bank's cashier's checks remitted by county tax collector in payment of his accounts, had demand against bank on checks, and also against it as depository, where, after bank's failure, state proved its demand on checks, making no reference to deposit, and did not seek in direct proceeding, under Rev. St. arts. 464, 471, to set aside nor abrogate order of commissioner of insurance and banking, approving claim against bank, it cannot attack it collaterally.

3. Depositaries ⟐10, 13—Taxation ⟐557 (1)—State accepting cashier's checks and given credit therefor without right of action against collector or county depository nor sureties on depository bond.

Where state treasurer accepted county depository's cashier's checks in payment of tax collector's account, and deposited them and re-ceived credit therefor with its depositories, state has no cause of action in respect thereto against tax collector nor county depository nor sureties on depository bond.

4. Pleading ⟐339—Permitting withdrawal of answer excepting to cause of action and filing of plea to jurisdiction held without error.

Where defendants filed special exceptions to petition, and before hearing thereon plaintiff amended petition, eliminating matter excepted to, permitting them to withdraw exceptions and file plea to jurisdiction *held* without error.

5. Depositaries ⟐11—Excluding from jury proof describing demand as against depositary held without error.

Where approval of claim by commissioner of insurance and banking was adjudication of nature of state's right to recover against defunct bank, there was no error in excluding from jury in action against the bank as depository proof of state's claim, describing its demand as being for taxes collected and on deposit.

6. Courts ⟐329—Issue of intent as to jurisdictional allegation properly referred to amended petition.

Where state amended its petition seeking recovery on cashier's checks to assert claim on a deposit, it thereby changed its cause of action, and in effect instituted new suit, and hence there was no error in referring issue of intent in making false statement that amount of deposit was within jurisdiction of district court to the last petition.

Appeal from District Court, Tyler County; J. M. Combs, Judge.

Action by the State against the Tyler County State Bank and others. Judgment for defendants, and plaintiff appeals. Affirmed.

John W. Goodwin, Asst. Atty. Gen., for the State.

Robt. A. Shivers, of Port Arthur, Smith, Crawford & Sonfield, Sonfield, Nall & King, and Oswald S. Parker, all of Beaumont, and Mooney & Smith, J. E. Wheat, and Coleman & Lowe, all of Woodville, for appellees.

WALKER, J. This suit was tried on appellant's third amended original petition, wherein it sought to recover of and from the depository bondsmen of the Tyler County State Bank the sum of $37,718.02, on allegations that the bank had been duly designated the depository of Tyler county; that the parties sued as bondsmen had duly executed the statutory depository bond; that the bank failed and was closed by the commissioner of insurance and banking on the 28th day of March, 1921, at which time it had on deposit with the Tyler County State Bank, in its character as depository of Tyler county, the sum of $37,718.02. The bank and the commissioner of insurance and banking were made parties defendant. The case was tried

to a jury on appellee's plea to the jurisdiction of the trial court, wherein appellees alleged that at the time this suit was instituted the plaintiff had on deposit with the bank less than $500, which fact was known to plaintiff, and that the allegations as to the amount due were fraudulently made for the purpose of conferring jurisdiction on the trial court. On the statement of the amount claimed by the state to be on deposit to its credit in the Tyler County State Bank, the court submitted the following question:

"Was such statement made in the pleadings of the plaintiff here knowing that the state of Texas did not have on such deposit on March 28, 1921, as much as $500, and was said statement so made in said pleading for the purpose of wrongfully making it appear that the amount of said deposit was within the jurisdiction of this court and without being believed by the pleader to be true?"

This question was answered by the jury, "Yes." In answering the question propounded by the court to the jury, the court instructed them that—

"Under the undisputed evidence in this case the state had on deposit in the Tyler County State Bank as county depository less than $500 on March 28, 1921."

It thus appears that the only issue submitted by the court to the jury was, in effect, the good faith of the plaintiff in making the jurisdictional allegations.

Appellant duly excepted to the charge of the court, and now asserts as a proposition under its exception that the state, in law and in fact, did have on deposit the amount by it alleged, to wit, $37,718.02. On this proposition, the facts are substantially as follows: On the 14th day of March, 1921, the county tax collector had on deposit with the Tyler County State Bank, as county depository for the account of the state, the sums of $1,477.-16 and $35,899.53. These sums represented state taxes collected by the tax collector and due the state. A. W. Harrison, as collector of Tyler county, had been withholding his report and remittance to the state for some time, at the request and on the statement of the cashier of the Tyler County State Bank that he did not have on hand sufficient funds to take care of that item, but on the 14th day of March he told Mr. Harrison that the funds were then in the bank. Thereupon Mr. Harrison went to the bank and drew against his depository account two checks in the respective amounts just given, payable to the order of the Tyler County State Bank, and signed by him in his official capacity. These checks were then delivered by him to the cashier of the Tyler County State Bank, and were stamped across the face, "Tyler County State Bank, paid March 14, 1921." The cashier then delivered to Mr. Harrison, as tax

collector, two cashier's checks of date March 14, 1921, one No. 20,734, for the sum of $1,477.16, and the other No. 20,735, for the sum of $35,899.53. Each of these checks was payable to the order of "State Treasurer." Mr. Harrison then remitted these checks, together with his report, to the state comptroller, as had been his custom while holding the office of tax collector. At the same time he sent his report to the state comptroller. Mr. Harrison received from the state official deposit warrant No. 3072, reciting that the treasurer of the state of Texas had received from A. W. Harrison, tax collector, Tyler county, by Lon A. Smith, comptroller, the sum of $35,899.53, and credited to the account of state revenue 1920 taxes, signed "Lon A. Smith, Comptroller's Office, Austin, Texas, March 22, 1921." On the back of this warrant was the following indorsement: "Comptroller's Office, State of Texas, Austin, March 22, 1921. Received in treasury the amount specified on reverse hereof. John W. Baker, Treasurer." A similar warrant, No. 3073, was issued and delivered to the county tax collector covering the cashier's check of $1,477.16. While these cashier's checks were duly issued and forwarded to the state treasurer, and by him duly received, it reasonably appears from the record that they were never presented to the Tyler County State Bank, and were never paid. The check for $1,477.16 bears the following indorsements:

"Pay to the order of any bank or banker; all prior indorsements guaranteed. March 23, 1921. John W. Baker, State Treasurer."

"Pay to the order of any bank, banker or trust company. Order of Federal Reserve Bank of Dallas. All previous indorsements guaranteed. Corsicana National Bank, Corsicana, Texas, March 24, 1921."

"Pay to the order of any bank or banker. Prior indorsements guaranteed. March 25, 1921. Federal Reserve Bank of Dallas."

A series of similar indorsements were made on the cashier's check for $35,899.53, but by different banks. On dates subsequent to the dates of the indorsements on the back of the checks, the comptroller's office and the treasurer's office made entries on their respective books charging back these items, and showing that they had not been paid. On the trial of this case both the cashier's checks were in the possession of the state of Texas. On the 25th day of August, 1921, the state of Texas presented these two cashier's checks to the commissioner of insurance and banking in the due course of liquidation of the Tyler County State Bank, and "had them allowed as claims in its behalf." This proof of claim was on the regular form. The paragraph intended for claims based on deposits was not filled out, but in the proof of claim it was described as follows:

"The undersigned hereby certifies on the 28th day of March, 1921, that Tyler County State Bank, Woodville, Tex., was indebted to the state of Texas in the sum of $37,718.02, which debt originated and is evidenced and described as follows: And the evidence of said indebtedness is hereunto attached and made a part hereof; said debt is or has been secured as follows: 'Cashier's checks.'"

On the 31st day of July, 1923, the state again made proof of its claim and had the same approved by the commissioner of insurance and banking, in which the indebtedness is described as follows:

"That said indebtedness is for state taxes, collected by A. W. Harrison, tax collector of Tyler county, Tex., and deposited by him in the Tyler County State Bank, the county depository of Tyler county, Tex.; that said debt is secured by the depository bond executed by the Tyler County State Bank as county depository of Tyler county, Tex., and is therefore interest bearing."

As to the two checks drawn by A. W. Harrison as tax collector on the funds held by him for the state of Texas in the Tyler County State Bank, as depository of Tyler county, he testified:

"These checks represented state funds collected for the state for the months of December, 1920, and January, 1921. I received cashier's checks in payment for these checks. These two cashier's checks, both dated March 4, 1921, one for $1,477.16, and the other for $35,899.53, are the two cashier's checks that I received in payment of the two checks I drew on the county depository. When I got the cashier's checks I mailed them immediately. I mailed them direct to the state comptroller. In connection with that, I made a report of the amounts due the state for taxes collected by me. This report went to the comptroller, remitted to the comptroller with these cashier's checks. I had previous to that time, in my capacity as tax collector of the state of Texas, in making monthly reports, remitted to cover in cashier's checks of the Tyler County State Bank. This had previously been uniformly accepted by the state comptroller. There never was a bit of trouble about it. * * * I sent those reports that you asked me about covering my account with the state of Texas in December, 1920, and January, 1921, to the comptroller. I sent at the same time to the state treasurer the cashier's checks of Tyler County State Bank payable to the state treasurer, which have been introduced in evidence, covering the amounts shown on my report to the comptroller as belonging to the state out of taxes collected by me. The state treasurer acknowledged receipt from me of funds covering these two reports."

The state also complains of the exclusion of certain evidence and of certain rulings by the court, on the pleadings.

## Opinion.

[1] Construing the facts of this case most favorably to the state, and indulging in its favor all reasonable intendments that might arise, we believe the state's demand was on the cashier's checks, and not against the bank in its character of depository of Tyler county and the sureties on its depository bond.

It appears without controversy that the tax collector drew his checks on the Tyler County State Bank in its character as depository; that he presented these checks to the cashier of the bank, and accepted in payment of his checks as drawn the checks of the bank. If this conclusion must be drawn, then the acceptance of the cashier's checks was in payment of the checks drawn by the tax collector on the depository account, and thereby liquidated that account. This conclusion on the evidence of the tax collector, it seems to us, must follow because the Tyler County State Bank was functioning in two capacities—one as the bank and the other as depository of Tyler county. As depository, its duty was to receive and pay out in a lawful manner county and state funds. To secure the discharge of these duties was the condition of the sureties' liability. While these funds were credited to the tax collector in his depository account, the sureties were liable. When he withdrew these funds from that account, that is, when the bank, acting as a depository, paid these funds to the tax collector, the sureties' liability was discharged. Now, when the tax collector presented his checks, had he withdrawn the actual money and purchaser therewith a cashier's check from some other bank, or from the Tyler County State Bank itself, no question of liability against the sureties could arise. It follows, then, that when he presented his checks to the bank as county depository—and he could do it in no other capacity—and then received and accepted the cashier's checks in payment of his official checks the depository liability of the bank was discharged, and it became liable on its duly issued checks only in its character as a bank. Did he accept these checks in payment of his checks? He so testified, and is corroborated by the fact that he did not draw his official checks and remit them to the state treasurer, nor did he accept the cashier's checks until assured by the cashier that the bank had the necessary funds to protect its checks.

Again, if we concede, as appellant contends, that the state treasurer was without authority to receive from the tax collector in payment of his account anything except money, yet in this instance, as he had been constantly doing theretofore, he did accept from the tax collector the cashier's checks in payment of his account. Unquestionably, having accepted these checks, they belonged to the state, and the state had the right to collect from the Tyler County State Bank the amount thereof.

[2] Now, if we concede, as appellant con-

tends, that, while holding these checks, it also had a demand against the bank and its depository sureties, yet even on these concessions it must follow that the state did not have the right to assert both claims, that is, a demand against the bank in its banking character and also a demand against the bank and its sureties in its character of county depository. If the state had the two remedies, it appears that on the 25th day of August it made a due election of its remedy and proved up its demand on the cashier's checks, making no reference to the deposit, and filling out no blanks in the printed form in relation thereto, thereby fixing the status of its claim as a demand against the bank on its cashier's checks. On the effect of the order of the commissioner of insurance and banking, approving a claim against an insolvent bank, the Attorney General advances the following proposition (applied by him, however, to the proof made in July, 1923):

"The action of the commissioner in approving plaintiff's claim was, we claim, an adjudication thereof, and entitled plaintiff to recover from the bank the amount so allowed.

"As to whether or not the approval of plaintiff's claim by the commissioner of insurance and banking was an adjudication that that sum was due, we refer the court to Lankford v. Platt Iron Works, 235 U. S. 461. The question considered in that case was whether or not the action of the commissioner of insurance and banking in classifying claim was final. The court held in that case that the action of the commissioner was final and not reviewable by the courts.

"The statutes of this state with reference to the authority of the commissioner in passing upon claims provide, where he rejects a claim, that suit must be brought thereon to establish it within six months. R. S. art. 464. It follows that, if suit is not brought within the six months' period, his action is final. Our statutes (R. S. art. 471) provide that, where the commissioner has approved a claim, any party interested may file objections to such approval with the commissioner, who shall present the same to the district court, if in session, or the judge thereof, if in vacation, at the time of the application to declare a dividend. We think it follows that, where no objection, as in this instance, is filed, the approval of the claim by the commissioner is an adjudication thereof, and final."

If this proposition is sound—and the state having advanced it, it should be bound thereby—the order of the commissioner of date 25th of August, 1922, approving the state's claim, was a full adjudication of its rights, and became res adjudicata of the nature of the state's demand. As the state did not seek to set aside nor abrogate this order in a direct proceeding, it cannot now attack it collaterally. If the proposition announced by the Attorney General is sound, it is a complete bar to the state's cause of action on the deposit.

[3] Again, while there is no proof that the checks were deposited by the treasurer in a duly designated depository, the duty rested upon him so to do, and, in the absence of proof to the contrary, we conclude that he discharged his official duty and deposited the checks in the manner provided by law, that is, in a duly designated depository. Also, there is no affirmative proof that the bank receiving this check gave the state credit therefor, but there is no proof to the contrary. There is no suggestion that the checks were received by the bank for collection. From the nature of the indorsements made on the checks, we conclude that the proceeds thereof were duly credited by the depository to the account of the state. Then, on authority of Watson v. El Paso County (Tex. Civ. App.) 202 S. W. 126, these cashier's checks were the property of the depository, and the state had no interest therein. If the checks were the property of the depository and the proceeds thereof had been credited to the state, neither the depository nor the treasurer had authority to withdraw the state funds from the depository and repurchase therewith the cashier's checks; nor did the depository have the authority to charge the state's account with the amount of these checks. The books of the depository showed a credit to the state for the proceeds of the checks.. The funds thus credited to the state belonged to the state, and could be withdrawn only in the manner provided by law, that is, on warrants duly drawn by the proper state officials. We think this is the clear holding of the El Paso court in the case cited. On its authority we approve the following proposition announced by appellees:

"So far as the state of Texas is concerned, it has received payment of the amount of the cashier's checks by credits allowed therefor by its depositories and such state depository banks and their bondsmen are liable to the state for the amount thereof. Since it has received such payment, it has no cause of action in respect thereto as against A. W. Harrison, county tax collector of Tyler county, or against the Tyler County State Bank in its capacity of county depository and the sureties upon its official depository bonds."

The state offered certain letters from one state official to another in relation to these accounts. No error was committed by the court in excluding these letters, as they were immaterial on the issue of the nature of the state's claim. In so far as they could affect the good faith of the state in instituting this suit, the jury had the benefit thereof. Besides, it appears that this claim was handled for the state under the direction of the Attorney General, and that he was fully cognizant of all the facts connected with this

261 S.W.—27

claim, and the letters between the different departments of the state could not have been material on the issue of good faith further than as received by the court.

[4] The appellees filed special exceptions to the allegations in one of the state's petitions wherein it pleaded all the facts in relation to the nature of its claim; that is to say, the state set forth the facts in relation to the cashier's checks held by it, which allegations were duly excepted to by defendants. Without permitting these exceptions to be heard, the state amended its pleadings, eliminating all reference to the cashier's checks, and predicating its demand on the theory of a deposit. When this petition was filed the court permitted the defendants to withdraw their answers excepting to the plaintiff's cause of action, and permitted them to file in due order of pleading this plea to the jurisdiction on which this case was heard. This was not error. In Fulmore v. Benson (Tex. Civ. App.) 257 S. W. 700, it is held:

"It is within the discretion of the trial judge to permit a pleader to withdraw pleadings filed out of due order and file them in due order; or, upon proper motion and showing, permit the filing of pleadings theretofore not filed, which might necessarily be filed out of due order because of the procedure already had in the case."

[5] The court did not err in excluding from the consideration of the jury the proof of claim made by the state on the 31st day of July, 1923, describing its demand as being for taxes collected and on deposit. The approval of the credit in August preceding, as we have already said, was an adjudication of the state's right to recover and of the nature of its demand. If the state had no cause of action against the sureties, it certainly had none against the bank and banking commissioner. The due allowance of its claim against the bank was an adjudication of its rights.

[6] No error is shown against the court's charge in submitting the jurisdictional issue on the petition on which appellant tried the case, rather than confining it to the intention of the pleader at the time the suit was instituted. In changing its allegations from liability on the cashier's checks to one on a deposit, the state changed its cause of action, and, in effect, instituted a new suit. The issue of "intent" was properly referred to the last petition. Bigham v. Talbot, 63 Tex. 271.

Without quoting the circumstances relied upon by appellees to sustain their jurisdictional plea, we believe the issue submitted by the court was raised, and that the jury's verdict in answer thereto should be sustained.

The judgment of the trial court is in all things affirmed.