**STATE v. TYLER COUNTY STATE BANK et al.　(No. 545–4285.)**

(Commission of Appeals of Texas, Section B. Dec. 2, 1925.)

**1. Banks and banking ⬤➡189—Bills and notes ⬤➡1—"Check" and "cashier's check," defined.**

An ordinary check is simply a written order of depositor to his bank to make a certain payment and is executory in its nature, while a "cashier's check" is one issued by authorized officer of a bank directed to another person, evidencing that payee is authorized to demand and receive upon presentation from bank amount of money represented by check, and like an ordinary check it is also executory in its nature and revocable at any time before bank has paid it (citing Words and Phrases, Second Series, "Check").

[Ed. Note.—For other definitions, see Words and Phrases, Cashier's Check.]

**2. Depositaries ⬤➡10—Acceptance of county treasurer's cashier's checks in payment of tax collector's account by state held not "payment."**

Acceptance by state treasurer in violation of his official duties from county treasurer of cashier's checks in payment of tax collector's account, and deposit and receipt of credit therefor, *held* not to constitute payment of amounts represented thereby, in view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 2428, 7618, and 2444, that object of Legislature in creating depositories for public funds was to secure preservation of such funds until they were needed for uses for which they have been designated, and "payment" being discharge of an obligation by delivery and acceptance of money or something equivalent to money, which is regarded as such at time by party to whom payment is due (citing Words and Phrases, "Payment").

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by the State against the Tyler County State Bank and others. Judgment for defendants was affirmed in 261 S. W. 414, and plaintiff brings error. Reversed and remanded.

W. A. Keeling, Atty. Gen., and Jno. W. Goodwin, Asst. Atty. Gen., for the State.

Sonfield, Nall & King, of Beaumont, for defendant in error Cruse.

Mooney & Smith, of Woodville, for defendants in error Crumpler and others.

Smith, Crawford & Sonfield and Oswald S. Parker, all of Beaumont, for defendant in error Davis.

Coleman & Lowe, Jas. E. Wheat, and Mooney & Smith, all of Woodville, and Robt. A. Shivers, of Port Arthur, for all other defendants in error.

SHORT, J. Between the 9th day of February, 1919, and the 28th day of March, 1921, the Tyler County State Bank of Woodville was a duly incorporated and going concern under the laws of the state of Texas as a bank of discount and deposit, and elected to operate under the depositors' guaranty fund plan. On the 10th day of February, 1919, said bank was duly appointed by the commissioners' court of Tyler county, Tex., the depository for Tyler county, Tex., during the statutory period of two years. On the 13th day of February, 1919, it qualified as such depository by giving bond, which was duly approved. Thereafter, the commissioners' court having demanded of the bank a new bond as county depository, on the 9th day of August, 1921, it executed and delivered to Tyler county a new bond for a much larger sum with different sureties. On the 28th day of March, 1921, the commissioner of insurance and banking closed the bank, and took charge of it for the purpose of liquidation. On the 24th day of July, 1922, the state of Texas instituted this suit in the district court of Tyler county against the bank and its sureties on both bonds as county depository of Tyler county to recover $37,718.02 alleged by it to be for the taxes belonging to the state collected by the tax collector of Tyler county and deposited in the bank as county depository and secured by its bonds duly executed and approved as the law in such cases provides. On September 14, 1922, Tyler county filed in said suit its petition of intervention upon a demand for $53.837.17 alleged by it to have been on deposit in said bank as county depository when closed. The commissioner of insurance and banking was also made a party defendant. After some of the defendants had answered, and after the plaintiff had filed an amended petition, these defendants were allowed to withdraw their answers and substitute others, in which they were permitted to plead to the jurisdiction of the district court of Tyler county on the ground that the amount involved was less than $500, and that the state had by amendment so chang-

ed its cause of action as to perpetrate a fraud upon the court, knowing that the amount involved was less than $500. The court elected to try the plea to jurisdiction only, and, a jury having been impaneled and the issues submitted, the verdict resulted in favor of the defendants sustaining the plea to the jurisdiction. The court entered judgment on said verdict dismissing the suit.

The plaintiff alleged that at the time the bank was closed by the commissioner of insurance and banking it had on deposit therein as depository the amount sued for, being taxes due the state of Texas and collected by the tax collector of Tyler county for the state during the months of December, 1920, and of January, February, and March, 1921; and, further, that prior to the closing of the bank it, through the tax collector of Tyler county, demanded the payment of this sum, and that the bank issued on March 14, 1921, to the state treasurer its cashier's check for $35,-899.53 and its cashier's check for $1,477.16, neither of which checks were ever paid. The following are copies of the checks with indorsements thereon:

"Tyler County State Bank.
"88–1359.

"Woodville, Texas, Mar. 14, 1921. No. 20734.
"Guaranty Fund Bank.

"Pay to the order of State Treasurer (N.–P. Teller) $1,477.16, exactly fourteen hundred seventy-seven dollars sixteen cents.
"Cashier's check.
"[Signed]	W. I. Hunter, Cashier."

Upon the reverse side of the above check appeared the following indorsements:

"Pay to the order of any bank or banker; all prior indorsements guaranteed. March 23, 1921, John W. Baker, State Treasurer.

"Pay to the order of any bank, banker of trust company. Order of Federal Reserve Bank of Dallas. All previous indorsements guaranteed. Corsicana National Bank, Corsicana, Tex., March 24, 1921.

"Pay to the order of any bank or banker. Prior indorsements guaranteed. March 25, 1921. Federal Reserve Bank of Dallas."

"Tyler County State Bank.
"88–1359.

"Woodville, Texas, Mar. 14, 1921. No. 20735.
"Guaranty Fund Bank.

"Pay to the order of State Treasurer (N.–P.) $35,899.50, exactly thirty-five thousand eight hundred ninety-nine dollars fifty cents.
"Cashier's check.
"[Signed]	W. I. Hunter, Cashier."

Upon the reverse side of the foregoing check appeared the following indorsements:

"Pay to the order of any bank or banker. All prior indorsements guaranteed. March 23, 1921. John W. Baker, State Treasurer.

"Pay to the order of any bank or trust company 88–402. March 24, 1921. Previous in-dorsements guaranteed. Red River National Bank, Clarksville, Tex.

"Pay to the order of any bank, banker or trust company March 26, 1921. Previous indorsements guaranteed. American Exchange National Bank of Dallas, Tex."

The tax collector testified that he deposited in, and on March 14, 1921, had funds collected for and belonging to the state of Texas on deposit in, the Tyler County State Bank as county depository, on which funds he drew two checks on said bank to cover the funds that he had in the bank belonging to the state at that time, and that he received in payment the above-described cashier's checks, both of which he mailed immediately direct to the state treasurer, and in connection with this transaction he also mailed his report of the amounts due the state for taxes collected by him, this method being his customary and usual one, using forms prescribed by the comptroller; that he received from the state comptroller deposit warrants showing that the cashier's checks had been received and credited to his account by the state treasurer covering the amount of the two checks. These checks were introduced in evidence upon the trial, and were shown to have been in the hands of the state treasurer without ever having been paid by the bank. It was also shown that the state first filed its claim with the banking department for the amount of these checks based on the checks themselves, which claim was allowed. Afterwards another claim was presented for the same amount, which was also allowed, the date of the proof of the first claim being August 25, 1921, and the date of the second claim being July 30, 1923, the first claim being based on the cashier's checks and the demand being upon a noninterest-bearing and unsecured deposit, while proof of the second claim was based upon a debt secured by the depository bonds of the bank and interest bearing. The tax collector also testified that, in addition to the amount represented by these checks, the state had on deposit with the bank at the time it was closed a sum of money less than $500.

[1] The state having given due notice of appeal to the Court of Civil Appeals of the Ninth District, and having perfected its appeal, upon a consideration of the case by that court, an opinion was rendered affirming the judgment of the trial court. 261 S. W. 414. The opinion of the Court of Civil Appeals in effect holds that, the tax collector having drawn his checks upon the bank for the amounts represented by the cashier's checks, and having accepted as a payment of the checks so drawn by him the cashier's checks issued by the bank payable to the state treasurer, and the state treasurer having received said checks and recognized them as payments by the tax collector of Tyler county of the amount of his account with the state, the

bank had discharged its obligation as a county depository to the extent of the checks, and, the tax collector having less than $500 on deposit with the bank, the district court had no jurisdiction of the amount, and therefore the case was properly dismissed by the trial court.

An application to the Supreme Court having been duly presented by the state through its Attorney General, the same was granted, and, the case having been referred to this section for disposal, we have concluded that it is unnecessary to make a more extended statement of what the record shows, since it is our opinion that both the Court of Civil Appeals as well as the trial court erred in holding that the cashier's checks issued by the bank and received by the state treasurer were payments to the extent of the amounts represented by them of the funds deposited with the bank and belonging to the state. An ordinary check is simply a written order of a depositor to his bank to make a certain payment, and is executory in its nature. A cashier's check is one issued by the authorized officer of a bank directed to another person evidencing the fact that the payee is authorized to demand and receive upon presentation from the bank the amount of money represented by the check, and like an ordinary one, it is also executory in its nature and revocable at any time before the bank has paid it. 1 Words and Phrases, Second Series, p. 658. Checks are expected to be paid on presentation, but reliance on that expectation does not bind the holder, unless the check itself is actually paid, except where there has been gross negligence in its presentation, resulting in injury to the bank or some of its depositors. The term "payment" is the discharge of an obligation by the delivery and acceptance of money or of something equivalent to money which is regarded as such at the time by the party to whom the payment is due. Cranston v. West Coast Life Insurance Co., 63 Or. 427, 128 P. 430; 6 Words and Phrases, p. 5247. In its broadest signification, "payment" is satisfaction of an obligation. Town of Manitou v. First National Bank of Colorado Springs, 37 Colo. 344, 86 P. 78. To constitute "payment" there must be a delivery by the debtor, or his representative, to the creditor, or his representative, of money or something accepted by the creditor as equivalent thereof with the intention on the part of the debtor to pay the debt and accepted as payment by the creditor. 30 Cyc. p. 1181. "Payment" means full satisfaction as contrasted with an "accord," which involves the acceptance of something as satisfaction, and "release," which is a conclusive acknowledgment of satisfaction. Robinson v. St. Johnsbury & L. C. R. Co., 80 Vt. 129, 66 A. 814, 9 L. R. A. (N. S.) 1249, 12 Ann. Cas. 1060. The term "payment" means a payment in money, and, in order to constitute a payment, the debtor must give something either in money or something which is the equivalent of money. Commercially speaking, the term "payment" relates to and is restricted to a payment in money.

The conditions of the bonds executed by the bank are that it "shall safely keep and faithfully disburse the funds of Tyler county according to law," and "shall faithfully perform the duties and obligations devolving by law upon said depository, and shall pay upon presentation by law all checks drawn upon said depository by the county treasurer of said Tyler county, and that said county funds shall be faithfully kept by said depository and accounted for according to law." These conditions clearly indicate the duties incumbent upon the bank as the county depository.

Article 2428 of Vernon's Sayles' Civil Statutes of 1914 prescribes that all officers charged with the duty of remitting to the state treasurer funds belonging to it shall be required to remit the funds, meaning thereby the actual cash in the manner required by law, while article 7618 of the same statutes requires collectors of taxes to pay over to the state treasurer all moneys collected by him, excepting such as he is allowed by law to pay in his county, reserving only his commissions, and that to enable him to do so he may at his own risk send the moneys so collected to the state treasurer at the least cost to the state. Said article also provides that the state treasurer shall accept no payment from tax collectors other than money orders or direct cash payments which may be made through express companies, banks, or other sources. This same article requires the state treasurer, whenever he shall have received a remittance from a collector of taxes, to promptly pay the money so remitted to the state treasury on the deposit warrant of the comptroller, and the money when so deposited shall be a credit to the said collector of taxes. Article 2444 of Vernon's Sayles' Statutes of 1914 provides that, when the bond given by a county depository shall have been approved by the commissioners' court and the comptroller, an order shall be made designating such bank as a depository of the funds of the county, and the same article provides that it shall be the duty of the county treasurer immediately upon the making of such order to transfer to said depository all the funds belonging to the county or any district or municipal division thereof, and it further provides that any failure to make such deposit shall make the county treasurer liable to the said depository for 10 per cent. upon the amount not so deposited. These provisions of the statute have been cited merely to show the policy of the law with reference to public funds, and to show that the object of the Legislature in creating depositories for public funds was to secure the preservation of said funds until they were

needed for the uses for which they have been designated.

In the case of Middlekauff v. State Banking Board, 111 Tex. 561, 242 S. W. 442, the Supreme Court quotes with approval the declaration in Crane v. Clay, 25 Eng. L. and Eq. Reports, 451, as follows:

"A bill given for and on account of money due on a simple contract operates as a conditional payment, which may be repudiated at the option of the creditor, if the bill be unpaid at maturity in his hands, in which case he may rescind the transaction of payment and sue on the original contract"—citing Johnson v. Amarillo Improvement Co., 88 Tex. 510, 31 S. W. 503.

[2] In the Middlekauff Case the facts were that Middlekauff, having an open, unsecured, and noninterest-bearing deposit with the bank of $3,712.35, cashed a check for $200, and received from the bank its cashier's check for $3,000, giving in exchange his own check on the bank for $3,000 just as the tax collector did to this bank, receiving from this bank its cashier's check in exchange. Just as in this case, the cashier's check in the Middlekauff Case was never paid on account of the insolvency of the bank, and by the Supreme Court, Judge Greenwood delivering the opinion, it was held that this obligation of the bank evidenced by its cashier's check could be discharged only by payment in money to the holder of the cashier's check. The state, through its agent, the tax collector, had put its money in the bank for safe-keeping, and was entitled to rely on the security afforded by the bonds which the bank had duly executed to the proper authorities. The agent of the state, in the person of the tax collector, was expressly forbidden by the terms of the law to bind the state by accepting from the bank, in satisfaction of its obligation to securely keep the funds of the state, anything except money. Likewise, the agent of the state, in the person of the state treasurer, was expressly forbidden by law to accept from the tax collector, in satisfaction of the tax collector's account for moneys collected belonging to the state, anything except money. The fact that the tax collector accepted a cashier's check as payment of the money belonging to the state in the hands of the bank which had been deposited by the tax collector is not a material one. By accepting the cashier's check the tax collector violated his official duty. In accepting the cashier's check as payment he was acting beyond the scope of his authority as an agent of the

state, even as the state treasurer was so acting when he accepted the cashier's check from the tax collector in satisfaction of the account of the tax collector with the state. Middlekauff v. State Banking Board, 111 Tex. 561, 242 S. W. 442; 5 R. C. L. 483, 484; Walker v. Sellers, 201 Ala. 189, 77 So. 715; Clark v. Chicago Title & Trust Co., 186 Ill. 440, 57 N. E. 1061, 53 L. R. A. 232, 78 Am. St. Rep. 294; Lummus Cotton Gin Co. v. Walker, 195 Ala. 552, 70 So. 754; Western Brass Mfg. Co. v. Maverick, 4 Tex. Civ. App. 535, 23 S. W. 728; Anderson v. Owen, 112 Miss. 476, 73 So. 286; Bank of Greenville v. Kretschmar, 91 Miss. 608, 44 So. 930.

It is our opinion that, if the state, through its agent, the tax collector of Tyler county, deposited funds with the Tyler County Bank as a county depository, which the bank has never delivered in kind, that is, in actual money, to a representative of the state authorized by law to receive this money, it is liable in a suit of this character to have rendered against it a judgment for the amount thereof as a debt due the state, and that to the extent that the principal is liable its sureties are, modified, of course, by any facts which might relieve individual sureties from liability. An inspection of the voluminous pleadings on the part of some of the defendants in this case discloses the fact that upon a trial of the case, with full hearing of all the testimony, sundry defenses may be presented, and, in view of this situation, we feel justified in saying that this opinion is not intended to relate to any of these defenses except those discussed and those included by necessary implication. The disposal of this question renders unnecessary a discussion of any of the other assignments of error, as the matters will probably not arise in the same way upon another trial of the case.

We therefore recommend that the judgment of the Court of Civil Appeals affirming the judgment of the trial court and that of the district court be reversed, and that the case be remanded for another trial not inconsistent with this opinion.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court. We approve the holding of the Commission of Appeals on the questions discussed in its opinion.

CURETON, C. J., not sitting.