Charles EBERLEY et ux., Appellants,

v.

The FIRST NATIONAL BANK OF STANTON, Appellee.

No. 3099.

Court of Civil Appeals of Texas.

Eastland.

Oct. 15, 1954.

Rehearing Denied Nov. 12, 1954.

Thomas & Thomas, Big Spring, for appellants.

Coffee & Gilliland, Big Spring, for appellee.

GRISSOM, Chief Justice.

The Bank sued the Eberleys on a note for $81,000, dated April 29, 1952, and to foreclose a deed of trust lien on two and one-half sections of land. In a second count the Bank alleged that Mr. Eberley had denied execution of the note and deed of trust and, in the event he was not bound on said note and deed of trust, that, on July 18, 1952, the Eberleys owed the Bank $81,000 for money loaned them and the Bank, acting through its president, Jim Tom, prepared said $81,000 note and deed of trust; that Mrs. Eberley represented to Mr. Tom that she would take said note and deed of trust and she and her husband would execute them and acknowledge the deed of trust; that Mrs. Eberley took them and returned them to Tom with signatures thereon which she represented were those of herself and husband and that the deed of trust had been acknowledged by both; that said representations were false and were made for the purpose of inducing Tom to accept said note and deed of trust and extend to defendants the credit represented thereby; that but for said representations the Bank would not have accepted said note and deed of trust but it accepted same relying on said representations and, by reason thereof, the Bank had been damaged $81,000, because if they had been executed by Mr. Eberley the Bank would have had a valid lien on land worth more than $81,000.

In a third count, the Bank alleged the Eberleys had been married for many years; that they owned the Eberley Funeral Home in Big Spring, which was community property and operated by Mrs. Eberley, who had authority to act for Mr. Eberley; that on April 4, 1952, Mrs. Eberley borrowed for the Eberley Funeral Home $4,000 and executed a note payable to the Bank; that she signed said note "Eberley Funeral Home, Mrs. Charles Eberley-Chas. Eberley"; that Mrs. Eberley was the manager and borrowed the money for said business and, thereby, both defendants became liable on said note.

The Bank alleged that on April 22, 1952, Mrs. Eberley approached Tom for the purpose of borrowing $30,000 from the Bank, stating to him that her husband had authorized her to do so and to sign his name to notes therefor; that the Bank, acting through its said president, agreed to loan defendants $30,000; that Mrs. Eberley executed two notes for $15,000 each, dated April 29, 1952; that Mrs. Eberley represented to Tom that she had authority to execute said notes for her husband; that she signed one note "Chas. Eberley" and "Mrs. Chas. Eberley"; that she signed the other note "Mrs. Chas. Eberley", but

through oversight failed to sign her husband's name to the second note; that Mrs. Eberley received $30,000 on April 22, 1952; that the Bank relied on her representations; that they were false and made for the purpose of obtaining for defendants $30,000; that Tom relied on said representations and but for them the Bank would not have loaned $30,000 to defendants; that by reason of the fraud so perpetrated on the Bank the defendants were liable to the Bank, jointly and severally, for $30,000.

The Bank alleged that on April 29, 1952, Mrs. Eberley presented to Tom, president of the Bank, a check for $19,500 on a bank in Big Spring, signed "Charles Eberley by Mrs. Charles Eberley," said check being payable to "Jim Tom, President" and requested a bank money order for $19,500; that Mrs. Eberley represented to Tom that she was authorized to draw said check on her husband's account and that he had funds there sufficient to pay the check, which representations were false; that, relying thereon, the Bank, acting through Tom, executed a money order, dated April 29, 1952, payable to Mrs. Eberley, for $19,500, which was paid on May 3, 1952; that there were not sufficient funds in the account of Charles Eberley in the Big Spring bank to pay said check; that by reason of said false representations the Bank had been damaged $19,500.

The Bank alleged that on June 12, 1952, Mrs. Eberley again approached said president of said Bank; that she had a check on an El Paso bank for $27,500 which was signed "Charles Eberley" and she represented to Tom that her husband had drawn said check and requested her to purchase a money order and that there was $27,500 in her husband's account in the El Paso bank; that, relying on Mrs. Eberley's false representations, the Bank paid Mrs. Eberley $27,500 by executing a bank money order dated June 12, 1952, payable to Mrs. Eberley; that she received $27,500 thereon; that the Bank would not have executed said money order but for said false representations; that the Bank relied on said representations; that they were false, and known to be false when made; that, thereby, the Bank had been damaged $27,500.

The Bank alleged in a third count that on July 18, 1952, by reason of all of said transactions, the Eberleys owed the Bank $81,000; that the Bank then demanded that defendants execute a note for $81,000, dated April 29, 1952, which was the amount of defendants' indebtedness to the Bank, and that said note be secured by a deed of trust on two and one-half sections of land owned by defendants; that Mrs. Eberley took said instruments and thereafter returned them to Tom and represented to him that her husband had executed and acknowledged them; that her representations were false and defendants were thereby estopped to deny their execution and that the Bank was entitled to a judgment for its debt and foreclosure of its deed of trust lien.

The Bank alleged that if for any reason it was not entitled to a judgment on the note and foreclosure of a deed of trust lien, by reason of said fraud, the Bank was entitled to a judgment against both defendants for the amount of said debt as damages.

In response to the Bank's petition, the Eberleys filed a plea in abatement to the effect that Jim Tom, W. C. Houston and another Bank director named Price had paid the Bank some of the debt or damages claimed by the Bank and that said parties were claiming, or might claim, some individual right or interest therein, or in the Bank's cause of action, and that they were necessary parties to said cause to protect the Eberleys from any further action arising out of the same matters. Subject to said plea, defendants answered that they were not indebted to the Bank and that Mrs. Eberley's debt to the Bank had been paid. In answer to the Bank's allegations of fraud and damage, defendants alleged they did not owe the Bank $81,000 because, at the time of the execution of the $81,000 note and deed of trust, said debt exceeded ten percent of the Bank's capital and surplus and, therefore, the loan violated the banking laws and, further, that neither defendant was indebted to said Bank because it had received payment of the money loaned Mrs. Eberley and, further, that the sole proximate cause of

any damages sustained was the negligence of Tom.

The Eberleys alleged they did not owe any debt or damages on account of the $30,000 loan of April 22, 1952, because said loan was made in violation of the banking laws; that Tom, for the purpose of fraudulently concealing the loan from the bank examiners, divided same into two notes and placed only one on the Bank's records, and, fraudulently, for the purpose aforesaid, did not put the second note on the Bank's records; that the $30,000 loan was one transaction and the two notes were executed for the purpose of concealing the illegality of the transaction.

The Eberleys then alleged they were not indebted to the Bank on account of the $30,000 loan, or for damages resulting therefrom, because the Bank had sustained no loss, because it had been paid. In the alternative, in the event the Eberleys were mistaken in the allegation that the Bank had received payment of the $30,000, the Eberleys denied that the Bank loaned $30,000 to her; that, although she got a $30,000 bank money order and executed two $15,000 notes therefor, that concurrently therewith, Tom paid the Bank $15,000 "as one-half payment for such money order and if the defendants became indebted to anyone by virtue of said $15,000.00 it was to Jim Tom and not to the First National Bank of Stanton, which, to the extent of at least $15,000.00 of such $30,000.00 never sustained any loss * * *." The Eberleys alleged that if there had been loss or damage in connection with the $30,000 transaction, it was caused by the negligence of Tom, which was the sole proximate cause thereof.

The Eberleys alleged they were not indebted to the Bank and it had not been damaged by reason of the $19,500 check because, at the time or shortly thereafter, Jim Tom, president of the Bank, agreed to hold said check, in violation of law; that the Bank was not damaged thereby because "by the time such bank money order came through for payment that the Bank had received and did at such time receive the sum of $19,500.00 in payment of such bank money order." The Eberleys

alleged the Bank had received payment of the $19,500 loan and, therefore, defendants did not owe the Bank $19,500, nor had the Bank been damaged thereby; but that, if the Bank sustained loss or damage, Tom's negligence was the sole proximate cause thereof.

The Eberleys alleged they were not indebted to the Bank and it had not been damaged by the $27,500 check because the Bank violated the banking laws and, when said check was returned unpaid, the bank received $27,500 in payment thereof and said debt, or any damages occasioned thereby, had been paid to the Bank but that, if the Bank sustained any damage, its damage was caused by the negligence of Tom, which was the sole proximate cause thereof.

The Eberleys alleged that all of said transactions were handled by Tom, as president of the Bank; that he was a man of long banking experience and was the manager of said Bank and knew Mr. and Mrs. Eberley conducted a funeral home and that she had borrowed money only in relatively small amounts for the funeral home and for farming operations and Tom knew, or should have known, she had no authority to borrow money for the purpose of speculating in oil; that, on the occasion of the $30,000 transaction, Mrs. Eberley went to Tom's home at night and seemed in dire haste to obtain $30,000 in cash and told Tom she needed it for some oil venture and Tom made no attempt to determine whether Mrs. Eberley was a feme sole or whether her husband had knowledge of said transaction, or whether she had authority to bind him, except to take her word therefor, and, in violation of the banking laws, advanced Mrs. Eberley $30,000; that Tom did not enter one of the $15,000 notes on the records of the Bank but placed his own check for $15,000 in the Bank so that such loan would be concealed; that the making of said loan was negligence on the part of Tom, which was the sole proximate cause of any damage suffered.

The Eberleys alleged that after Mrs. Eberley had failed to pay the $30,000 at the time agreed upon and had begun to

"stall" Tom about its payment the $19,500 check transaction began; that Mrs. Eberley went to Tom, shortly before the Bank closed, with a $19,500 check, dated four days prior thereto, drawn on a Big Spring bank, where Mrs. Eberley lived, and wanted to purchase a bank money order with said check, again telling Tom she needed the money in the oil business; that Tom was negligent and made no attempt to investigate the circumstances that would cause a married woman to drive 20 miles to purchase a money order with a four-day old check on a bank in her home town at a time when she had failed to keep her promise with reference to paying the $30,000 theretofore loaned her; that, on the next day, Tom was informed her check was not good but made no effort to stop payment but agreed that the amount thereof be added to her debt to the Bank, and Tom, to conceal said transaction, paid said check to the Bank.

The Eberleys alleged that soon after payment of Mrs. Eberley's $19,500 check was refused the transaction concerning the $27,500 check began; that Mrs. Eberley again approached Tom desiring a bank money order for $27,500 for oil speculation and, with all of such information, Tom cashed the $27,500 check by giving Mrs. Eberley a money order for $27,500 and, thereafter, when her check was returned unpaid, Tom, to conceal said transaction, made no entry relative thereto on the Bank's records but paid said amount to the Bank; that Tom's acts were negligent and the sole proximate cause of any loss or damage.

The Eberleys alleged that Mr. Eberley never received any of said money; that if he had known of said matters he would have informed the Bank that Mrs. Eberley had no authority to act for the community estate or to receive any of said money, "except the $4,000.00 note dated April 4, 1952." Mr. Eberley filed a cross-action against Tom, alleging in detail all the matters heretofore mentioned and prayed that, in the event the Bank obtained judgment against him, he have judgment "against Jim Tom for a like amount or contribution."

In answer to the Eberley's plea in abatement, the Bank denied that anyone other than the Bank had any right, title or interest in the cause of action. By reason thereof, the Eberleys waived a hearing on their plea in abatement.

A jury found that (1) on April 22, 1952, Mrs. Eberley represented to Tom she was authorized by her husband to borrow $30,000 from said Bank; (2) that said representation was false; (3) Tom relied thereon; (4) it was a material inducement to the Bank to loan the $30,000; (4a) Mrs. Eberley represented to Tom she was authorized to sign her husband's name to notes for $30,000; (4b) said representation was false; (4c) Tom relied thereon; (4d) it was a material inducement to the Bank to make the loan; (5) that on April 29, 1952, Mrs. Eberley represented to Tom that she was authorized by her husband to draw a check on his account for $19,500; (6) that said representation was false; (7) Tom relied thereon; (8) it was a material inducement to the Bank to issue its $19,500 money order to Mrs. Eberley; (10) that on April 29, 1952, Mrs. Eberley represented to Tom that Mr. Eberley had funds in the Big Spring Bank sufficient to cover the $19,500 check; (11) said representation was false; (12) Tom relied thereon; (13) it was a material inducement to the Bank to issue its $19,500 money order to Mrs. Eberley; (14) that on June 12, 1952, Mrs. Eberley represented to Tom that the check for $27,500 on an El Paso Bank had been signed by Mr. Eberley; (15) that said representation was false; (16) Tom relied thereon; (17) it was a material inducement to the Bank to issue its $27,500 money order to Mrs. Eberley; (18) that on June 12, 1952 Mrs. Eberley represented to Tom that Mr. Eberley had sufficient funds in the El Paso Bank to pay the $27,500 check; (19) said representation was false; (20) it was relied on by Tom; (21) it was a material inducement to the Bank to issue its $27,500 money order to Mrs. Eberley; (22) that Mrs. Eberley did not have permission of Mr. Eberley to execute the $4,000 note dated April 4, 1952; (23) that Tom intended to pay the debt of defendants by giving to the Bank his check for $15,000

on May 2, 1952; (24) that Tom intended to pay the debt of defendants by giving to the Bank his check for $19,500 on May 19, 1952; (25) that W. C. Houston did not intend to pay the debt of the defendants by giving to the Bank his check for $27,500, on July 19, 1952; (26) that Tom intended to pay the defendants' debt by giving his check to the Bank for $19,000, on the account of Tom and Price, on November 8, 1952.

The Bank filed a motion to disregard the answers to issues 23, 24 and 26, wherein the jury found that Tom intended to pay the Eberleys' debts to the Bank by executing his checks to the Bank for $15,000, $19,500 and $19,000, respectively. The Bank alleged there was no evidence that Tom intended to discharge the indebtedness of the Eberleys, or that the Bank received and accepted such payments with the intention to extinguish the Eberleys' debt, or that a release of the Bank's cause of action was intended.

▋ The court found that the Bank did not receive or accept the money paid by Tom with the intention of extinguishing the Eberleys' debt. Payment of the Eberleys' debts, inquired about in said issues, meant, in substance, that Tom paid the money and the Bank received it with the intention to discharge and extinguish the Eberleys' debt. 48 C.J. 586; 70 C.J.S., Payments, § 1. Where a note is paid by a stranger thereto, it is generally held to be a purchase, not payment, of the note. 8 C.J. 588, Sec. 826; 10 C.J.S., Bills and Notes, § 451; Bradley v. Lehigh Valley R. Co., 2 Cir., 153 F. 350; 6 Tex.Jur. 814; Shanks v. First State Bank of Coahoma, Tex.Civ.App., 70 S.W.2d 444, 446; Grogan v. Smith, Tex.Civ.App., 33 S.W. 276, 277; Vogel v. Central Texas Securities Corporation, Tex.Civ.App., 62 S.W.2d 243, 245 (Writ Ref.); Cantrell v. Davidson, 180 Mo.App. 410, 168 S.W. 271, 274; Barcus v. J. I. Case Threshing Mach. Co., Tex. Civ.App., 197 S.W. 478; State v. Tyler County State Bank, Tex.Com.App., 277 S.W. 625, 42 A.L.R. 1347; 70 C.J.S., Payment, § 3, p. 213; 32 Tex.Jur. 629. In 10 C.J.S., Bills and Notes, § 451, p. 988, the rule is announced as follows:

"Whether payment of a negotiable instrument by a stranger thereto will discharge the instrument and the parties depends on whether the transaction was intended to be a payment or a purchase; nothing further appearing, such a payment is ordinarily considered a purchase, with the instrument remaining in effect."

▋ We have carefully considered all the evidence pertinent to this question and conclude there was no evidence that Tom paid his money to the Bank or that the Bank received it with the intention of extinguishing the Eberleys' debt. "* * nothing further appearing, such a payment is ordinarily considered a purchase * *." 10 C.J.S., supra.

▋ But, we are of the opinion, although Mr. Tom concluded that giving his checks to the Bank in connection with Mrs. Eberley's notes constituted a loan of his money to the Bank, there was a question of fact as to whether or not the Bank owned the entire cause of action sued on, that is, whether some of the notes were purchased by Tom or whether some of the loans were made by Tom, instead of the Bank. Of course, if the Bank did not own some of said notes, so much of the Bank's cause of action for damages was also not owned by it. The Bank's damages were evidenced by Mrs. Eberley's forged notes and measured thereby. From an assignment of said notes to Tom, if any, an assignment pro tanto of the Bank's cause of action for damages might be implied. Scott v. Brazile, Tex.Com.App., 292 S.W. 185, 187; Phelan v. Middle States Oil Corporation, 2 Cir., 154 F.2d 978, 1000; 10 C.J.S., Bills and Notes, § 203, pp. 690, 691; 6 C.J.S., Assignments, § 35, pp. 1085, 1086. Defendant objected to the charge because no issue was submitted as to damages or ownership of the cause of action asserted by the Bank. Despite Mr. Tom's conclusion that his acts constituted simply a loan to the Bank, he testified, relative

to a check given by him to the Bank for a note executed by Mrs. Eberley, "the Bank transferred it to me." In Johnson v. Cofer, Tex.Civ.App., 113 S.W.2d 963, 965 (Writ Ref.), the court said:

"If such pleading of Johnson be accepted as true, however, and he had in fact assigned such rents to the bank, manifestly he would not be a proper party, absent any authority shown vested in him to do so, to sue in his own name for that which he had already assigned and did not own." See also Simmonds v. St. Louis, B. & M. R. Co., 127 Tex. 23, 91 S.W.2d 332, 333.

Since the Bank alleged, in effect, that it owned all of said notes and all the cause of action for damages arising by virtue of Mrs. Eberley's fraud in obtaining money thereon the court erred in not submitting the issue of damages to the jury. Proof of the fact of damage and the amount thereof were prerequisite to recovery by the Bank and as to such matters it had the burden of proof.

The judgment is reversed and the cause remanded.