STATE v. TYLER COUNTY STATE BANK et al.　(No. 545–4285, Motion No. 6930.)

(Commission of Appeals of Texas, Section B. March 31, 1926.)

1. Equity ⬳56—Equity to prevent wrong will treat bank which as a bank issued cashier's checks to tax collector and same bank as a county depository as identical one with the other.

Equity looks to substance and spirit of transaction, and to prevent wrong and injustice will treat a bank which as a bank issued cashier's checks to tax collector and the same bank as a duly selected and acting county depository as identical one with the other.

2. Taxation ⬳557(1) — Tax collector is permitted at his own risk to transmit to state treasurer anything he sees fit as representative of money (Complete Tex. St. 1920, or Vernon's Ann. Civ. St. Supp. 1918, art. 2444; Rev. St. 1911, art. 7618, subd. 3).

Even though tax collector may be relieved under Complete Tex. St. 1920, or Vernon's Ann. Civ. St. Supp. 1918, art. 2444, of responsibility for safe-keeping of money collected by depositing it in county depository, he is permitted under Rev. St. 1911, art. 7618, subd. 3, at his own risk to transmit to the state treasurer anything he sees fit as representative of money rather than the money itself.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

On rehearing. Former opinion affirmed. For former opinion, see 277 S. W. 625.

SHORT, J. While the consideration of the motion for a rehearing has served only to intensify our conviction that the original opinion correctly decided the material matters involved in this case, yet, in deference to the earnestness of counsel representing defendants in error, we have concluded to write further on the subject.

The argument of counsel representing defendants in error in support of the motion for rehearing is based upon two major proposi-

tions, one being that a county depository is a distinct entity created by statute entirely separate and independent of the bank which happens to have been selected as county depository, and the other being that the state became a depositor of the bank by virtue of the issuance of the cashier's checks by reason of which the depository was relieved of any further liability, as such, to the extent of the amount of money claimed to be represented by such checks. The basis of the state's claim in this suit is not the cashier's checks, but the fact that the duly authorized agent of the state in the person of the tax collector of Tyler placed money belonging to the state in the county depository for safekeeping until this money or its equivalent had been lawfully paid to its agent, the state treasurer, coupled with the fact that this money or its equivalent had never been lawfully paid to any agent of the state authorized to receive it. In Kidder v. Hall, 251 S. W. 497, 113 Tex. 49, Chief Justice Cureton of the Supreme Court, in discussing the law applicable to the guaranty fund, says a depositor entitled to protection of the bank depositors' guaranty fund "is one who delivers to or leaves with a bank money, or checks or drafts, the commercial equivalent of money, subject to his order, and by virtue of which action the title to the money passes to the bank," in which it would be noted that the thing deposited is money or its equivalent. In the same case it is stated that one who did not occupy the relation of depositor by purchase from a bank a cashier's check does not thereby become a depositor. Now, if the state did not become a depositor of the Tyler County State Bank by virtue of the transaction involved in this case, and no actual money having been delivered to the state's agent, the tax collector, it logically follows that the money lawfully deposited in the Tyler County State Bank as a depository by the tax collector retained its status acquired at the time of its having been deposited. This status was one created by the law regulating county depositories, whereby a county depository lawfully receiving money from an agent of the state becomes obligated to the state to account for said money until the amount thereof has been lawfully withdrawn.

[1] The transaction involved in this suit, reduced to its simplest terms, is, that certain taxpayers paid to the agent of the state certain sums of money whereby the title to the money became vested in the state. In obedience to his duties, this agent of the state deposited with the Tyler County State Bank, which had been designated as the county depository, this aggregate sum of money pending its delivery to the owner. In pursuance of his duties, the agent of the state, in the person of the tax collector, demanded of the county depository this money. None was delivered to him. But, in response to this demand, the bank which was the county deposi-

tory delivered to him a couple of cashier's checks payable to the treasurer of the state, and these checks were forwarded by the tax collector to the state treasurer. In the meantime, the money actually remained, physically speaking, where the tax collector had placed it in the Tyler County State Bank, acting as the county depository of Tyler county. So far as the state is concerned, that money is still there, though demand has been duly made for its delivery. It is true that the tax collector says that he accepted these cashier's checks in payment of the demand upon the county depository, but equity looks to the substance and not the shadow, to the spirit and not the letter, in a case made appropriate by the facts, and to prevent a wrong and an injustice to prevail will treat a bank as such and the same bank as a duly selected and acting county depository as identical one with the other. It seeks justice rather than technicality, truth rather than evasion, common sense rather than quibbling. State National Bank v. Encinal Mercantile Co. (Tex. Civ. App.) 277 S. W. 399.

In the case of Eastland County v. Chapman, 276 S. W. 658, in speaking about a similar transaction, Judge Speer, of the Commission of Appeals, Section B, uses this language:

"It may be conceded that one whose deposit is carried by a state bank upon security or at interest may by mere agreement with the bank change the nature of the deposit by transferring it to the unsecured noninterest-bearing class, without the actual repayment to the depositor and redeposit with the bank by him, provided the bank be solvent at the time and able to make such actual payment, and the depositor therefore able to make such actual deposit. This is upon the conception that the law upon equitable considerations will treat that which ought to have been done as having been done. But this fiction will never be permitted where the thing that ought to have been done could not have been done. This principle of equity is applied to prevent a wrong and will never be applied to perpetrate a wrong."

But the defendants in error in this case claim that at the time these cashier's checks were issued the Tyler County State Bank had the money with which to pay them. Suppose this be conceded, and yet the fact remains that the title to this money was in the state, and the powers of its agent were limited to that of receiving the actual money from the county depository. The record in this case shows that no actual money was in fact received. Whatever was done by the county depository, as such, and the bank, as such, with reference to this money was represented by some possible entries made upon the books of the concern and the reception by it of the check of the tax collector and the issuance to the treasurer of the state of two cashier's checks which turned out to be worthless. As said by Judge Speer, in speak-

ing of this power with reference to the disposition of a deposit:

"This principle of equity is applied to prevent a wrong, and will never be applied to perpetrate a wrong."

But it is claimed by the defendants in error in the motion for rehearing that the tax collector of Tyler county virtually cashed this check for the amount represented by these cashier's checks, receiving actual money from the bank as a county depository, and that with this cash he purchased the cashier's checks from the bank as a bank. It is said by defendants in error that, when the tax collector drew his money from the depository, the liability of the depository was at an end, and the effect of the transaction was the same as though he had gone to some other bank and purchased the cashier's checks. This, of course, would follow if a bank as a depository, and a bank as a bank, were just as distinct entities as one bank and another bank having no connection; but this distinction is hypercritical, and, as said in the case of Kidder v. Hall, 251 S. W. 497, 113 Tex. 49:

"The law will look through all semblances and forms to ascertain the actual fact as to whether or not there has been a bona fide deposit made."

And further, as said in the case of Kidder v. Hall:

"If, with his check against an actual deposit, made in good faith, he had purchased a cashier's check such as was involved in the Middlekauff Case [242 S. W. 442, 111 Tex. 561], or a draft, which proved worthless, then the original deposit, not the check or draft, would have been protected."

Defendants in error admit that at the date of the issuance of the cashier's checks the tax collector had on deposit in the Tyler County State Bank as county depository the amount of money represented by these checks. This admission settles this case under the authority of both the Middlekauff and the Kidder Cases.

The theoretical distinction between the bank as a bank and the bank as a county depository is based upon some expressions in the case of Watson v. El Paso County (Tex. Civ. App.) 202 S. W. 126, but it is noteworthy that no attempt in the motion for rehearing has been made to apply the actual holding in the Watson Case to the one at bar. In the Watson Case, the suit was by the county against the tax collector and his sureties, and it was there held that the county could not recover an amount covered by a check shown to have been drawn by the collector on actual county funds in one bank and delivered by him to the county treasurer, who appears to have deposited the same in another bank which was the county depository, and received actual credit therefor on his account, though said depository charged back the check against the treasurer's account upon refusal of payment by the collector's bank. In other words, it was held that the collector discharged his obligation in the premises by reason of his check having been received and accepted by the county depository as a cash item, and that the withdrawal of such credit by said depository was in effect a withdrawal of county funds from a depository without lawful authority. If this were a suit by the state against the collector and his sureties, instead of one against the depository and its sureties, and the cash which these cashier's checks were supposed to represent had come into the custody and control of the state, then this holding would have some application; but the real reason of this suit is that no money was realized by the state on these checks, so that their issuance did not discharge anybody's obligation in the premises. The Watson Case does not in our opinion recognize distinct entities as between a bank as a county depository and a bank in general. It simply mentions the dual position occupied by the Union Bank in the transaction under consideration, and says that, when it as a "banking institution" accepted the check and as county depository gave the county credit therefor, it could not thereafter charge back such credit. Thus, though its functions were dual, its legal obligations in these several functions were identical, and thus, though the bank in the case at bar as a bank issued cashier's checks, this did not relieve it of its obligation as county depository unless and until the cash represented thereby came into the custody and control of the proper officials. Until then, it remained a debtor of the state to the full extent of the amount that had been deposited with it as state taxes, and the receipt of these cashier's checks did not constitute a payment of its debt. The Tyler County State Bank is the sole corporate entity involved, and it can no more dodge behind one or the other of its dual functions than can the individual tax collector as between his dual function of depositor in the bank and purchaser of the cashier's checks. The identity of the corporation in the one instance and of the individual in the other is the same, and the law will disregard all semblances in order to reach the actual facts.

[2] In speaking of funds collected by tax collectors and the obligations of county depositories upon the depositing of such funds by tax collectors, article 2444 of Complete Texas Statutes 1920, or Vernon's Ann. Civ. St. Supp. 1918, says:

"Upon such funds being deposited as herein required the tax collector and sureties on his bonds shall thereafter be relieved of responsibility for its safe-keeping."

But the defendants in error say that, according to subdivision 3 of article 7618 of the Revised Civil Statutes the tax collector may

· at his own risk send all moneys collected by him to the state treasurer at the least cost to the state. But it will be noted that this provision of the law uses definite terms, as, for instance, "all moneys collected." It will also be noted that under the provisions of this article the collector is allowed credit only when "filing receipts showing actual amount of exchange paid." It will also be noted that this statute does not, as claimed, by its very terms permit the collector at his own risk to accept anything other than money, but permits him at his own risk simply to transmit not the equivalent of money as measured at the time, but anything he sees fit as representative of the money rather than the money itself. The tax collector could have sent as well his own personal check or the check of any other private individual payable to the state treasurer but in doing so under the law his liability did not cease for the money in his possession until the money itself had been paid upon the presentation of the check or checks. Of course it is true that the depository could discharge its obligation by delivery to the proper officers of the actual cash; and we feel justified in saying that if this had been done in this instance, no contention would have been made that the county depository had not discharged its obligation as such. But, instead of doing this, it issued cashier's checks, the receipt of which did not constitute payment. Still, if they had been paid upon presentation, and the state had actually received the money, there would have been a practical compliance with the law, and at any rate no recovery could be had by the state as the depositor to the extent of said checks. Since they were not paid, and their receipt did not constitute payment, the relation of debtor and creditor as between the bank as the county depository and the state has continued. Actual money was deposited by the tax collector belonging to the state of Texas, and until actual money had been paid to the state of Texas the obligation of the county depository which received the money on deposit cannot be discharged.

We therefore recommend that the motion for rehearing be overruled.