## NEW CASINO, Inc., et al. v. CITY OF FORT WORTH.

No. 14810.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 13, 1946.

Rehearing Denied Jan. 10, 1947.

603

H. S. Lattimore, of Fort Worth, for appellants.

R. E. Rouer, Heard L. Floore, and Sam A. Woodward, all of Fort Worth, for appellee.

HALL, Justice.

This lawsuit originated over the terms of a written contract dated February 12, 1941 (retroactive to January 1, 1941), to expire December 31, 1945, by and between the City of Fort Worth, Tarrant County, Texas, as lessor, and George T. Smith of Tarrant County, Texas, as lessee; covering two tracts of land located on and adjacent to a portion of Lake Worth. Only Tract One is involved in this lawsuit, which is situated at a point where the Jacksboro Highway intersects the shore line of Lake Worth. There is situated on this tract of land a dance pavilion known as Casino.

The contract provided for a graduated flat cash monthly rental to be paid by lessee for each year. In addition thereto lessee was obligated to pay the following:

"* * * Lessee agrees to pay an additional amount equal to three (3%) per cent of the gross receipts from the operation of the business set out in paragraph 5 herein and located on Tract One, in excess of Fifty-five Thousand Dollars ($55,000.-00), such sum to be computed and paid on the 1st day of October for the years 1942, 1943, 1944 and 1945, there being no percentage on the gross receipts to be paid for the year 1941."

Paragraph 4 of said contract reads as follows:

"It is distinctly understood and agreed that the improvements now situated on Tracts One and Two are the sole property of Lessee, and subject to the terms and provisions of this lease Lessee shall have the right at the termination of this lease to remove said property from the demised premises, provided all sums due hereunder have been fully paid. * * *"

Paragraph 5 of said contract reads in part as follows:

"It is contemplated by the parties that Lessee will operate his dance pavilion located on Tract One and in connection with this operation will sell food, beverages, provide for the parking of cars for his patrons and use the property for other purposes incidental to the purposes enumerated above."

Part of Paragraph 6 is as follows:

"To further secure payment of the rent herein agreed to be paid on Tract One, Lessee does hereby give and grant to Lessor a lien upon all of the improvements, goods, wares, chattels, fixtures, furniture, equipment, tools and other property which are now located upon the above described Tract One, or which may hereafter be placed upon said premises by Lessee * * *."

In Paragraph 7 lessee agrees to furnish lessor a sufficient amount of water and sewerage facilities to be used in connection with lessor's bathing beach, etc.

In Paragraph 8 lessee agrees to maintain and keep the premises in good state of repair, and to carry public liability insurance in order to protect the people and the City, etc., and to comply with all city, state, county and national ordinances and laws.

Paragraph 9 is as follows:

"Lessee agrees that Lessor shall have the right at all reasonable times to examine the books and records of Lessee for the purpose of determining the 'gross receipts' of the business done by Lessee, and Lessee further agrees that should he sublet any concessions that he will require such concessionaires to also permit the examination of their books for the purpose of determining the 'gross receipts' of such concessionaires' business."

Most of the controversy is centered around the wording of a portion of paragraph 11, which reads thus:

"It is contemplated that a corporation may be formed to operate the business located on Tract One herein and permission is hereby given Lessee to assign this lease to such corporation, and in the event of such assignment it is agreed that the corporation shall be fully bound to perform all of the terms and conditions herein, and that the Lessee herein shall not be personally liable for any of the terms and agreements. * * *"

When the lease expired on the 1st day of January, 1946, the lessee undertook to seek a renewal of the lease. The City refused on the ground that the 3% as set out in the contract on gross receipts above $55,000 annually had not been paid. New Casino, Inc., and George T. Smith, as plaintiffs, filed this suit against the City of Fort Worth, setting up in their petition the fact that when said contract was entered into the improvements on Tract One were the property of a corporation in bankruptcy, and were covered by a large mortgage which was unpaid, and after the execution of said lease such improvements were sold to the mortgagee by the trustee in bankruptcy. The lease provides that a corporation may be organized to take over the improvements, and that the lessee was

permitted to assign said lease to said corporation to be organized, and that if such lease was assigned, then the lessee would be relieved from any and all obligations under the lease. They further allege that said mortgagee did cause a corporation to be organized, to-wit, New Casino, Inc., one of the plaintiffs herein, and that all stock was owned by the mortgagee except one share held by the lessee. That said new corporation made an agreement with the lessee that he should be manager of the corporation at a stated salary, but that the lease was never assigned to the corporation, and that the corporation, therefore, was not obligated to any of the terms of said lease. That the corporation made all of the money and, therefore, the lessee was not obligated to pay any sum of the gross receipts received by said corporation. The corporation in turn alleges that since it did not assume the obligations in the contract, and was not the assignee thereof, it did not owe any money under the excess gross receipts contract. In short, the allegations contain a simple statement that neither the lessee nor the new corporation owed any money except the flat rental which was paid monthly. The plaintiffs prayed for a temporary restraining order, restraining the City from interfering with the possession of the improvements known as the Casino, and that they were willing to pay any reasonable sum of rent pending the final disposition of this cause.

The City filed a cross action against both Smith and New Casino, Inc., for title and possession of both tracts and for judgment for the 3% amount due it on gross receipts annually above $55,000 derived from the business conducted on Tract One, together with interest at 6% per annum for money detained; for foreclosure of its landlord's lien; and for rental due it during the year 1946.

The case went to trial before a jury, and one issue was submitted to the jury, the same being the monthly rental value of the land after the termination of the lease.

Judgment was entered for the City against both plaintiffs for possession of the leased premises; for 3% excess rentals in a sum of over $12,000; for the rental value of the land since the termination of the lease, in the sum of $175 per month; and for foreclosure of the landlord's lien, together with interest at the rate of 6% per annum. The plaintiffs, New Casino, Inc., and George T. Smith filed this appeal.

The appellant, New Casino, Inc., raises the questions in Points 1, 2, 3 and 7 that the trial court should not have entered judgment against it because there was not sufficient evidence that it executed or assumed the percentage rentals set out in said lease; that such an issue was a disputed one and should have been submitted to the jury, and that there was no pleading of estoppel or any other fact upon which liability could be founded for rentals.

We do not find the trial court erred in so rendering said judgment against appellant, New Casino, Inc., for the 3% of gross receipts over $55,000, received annually during the years of 1942 through 1945, inclusive, for the reason we find that said property at all times either belonged to or was under control of the appellant, George T. Smith and/or the appellant, New Casino, Inc. It was specifically stated in the contract that all of the property in Tract One belonged to appellant Smith. The facts show that he had hypothecated same to mortgagee, and that when New Casino, Inc., became in existence, the mortgagee held some 98% of the stock for security, leaving the other 2% in the hands of appellant Smith and his wife, but appellant Smith and his wife controlled said corporation by a 2/3 vote of the directors. Smith testified that in the latter part of 1943, he paid off the mortgage and he and his wife received the entire stock. During all of this time, however, the New Casino, Inc., paid the flat monthly rate to the appellee out of its earnings, and received all benefits ascertained in the lease. Each of these rental payments not only amounted to a recognition of the execution of the lease contract, but was a clear ratification of same, and when mortgagee attempted to increase the number of directors from 3 to 5, the appellant Smith enjoined him from doing so in another suit, alleging and proving that he was the real owner of the stock, and the court sustained his action in that suit.

■ The court in the instant case found in its judgment that the contract was not assigned by appellant Smith to appellant New Casino, Inc., but that the undisputed evidence and the record reflects that said appellant, New Casino, Inc., assumed all of the provisions set out in said lease. We think the court was correct in its findings and it is needless for us to discuss further the points of error relative to the New Casino not assuming and acting under the provisions of the contract when it reaped all of the fruits and benefits that could be derived from it. The undisputed facts show that during the last four years of the contract said corporation took in a gross receipt of over $600,000, and we further find that the appellant, New Casino, Inc., plead the following:

"The total gross receipts of New Casino, Inc., are fully set up in its books and are readily ascertainable, and so far as your plaintiffs know or believe, no difficulty will be met in arriving at the amount that should be paid to the City by New Casino, Inc., if any sum is due by it under this lease, but New Casino, Inc., denies and has denied that any such percentage of its gross receipts is due the defendant City."

■ The principle involved here is based upon the conception that the law upon equitable concessions will treat that which ought to have been done as having been done. "This principle of equity is applied to prevent a wrong and will never be applied to perpetrate a wrong." State v. Tyler County Bank, Tex.Com.App., 282 S.W. 211, 213, 45 A.L.R. 1483; Eastland County v. Chapman, Tex.Com.App., 276 S.W. 654.

We might state further that the facts show that while the New Casino, Inc., was acting under said lease it paid off all of its indebtedness from the profits made on the leased ground of the appellee.

. Under the case of State National Bank v. Encinal Mercantile Co., Tex.Civ.App., 277 S.W. 398, 399, writ of error refused, the court stated:

"Equity looks to the substance and not the shadow, to the spirit and not the letter, in a case made appropriate by the facts, and to prevent a wrong and an injustice to prevail, will treat a corporation and the individual owner of its shares as identical, one with the other. It seeks justice rather than technicality, truth rather than evasion, common sense rather than quibbling. If an individual owner of a corporation uses it only for individual purposes, they will be considered to all intents and purposes one and the same." See also cases cited therein.

In the case at bar the corporation has never been out from under the control of appellant Smith and his wife. When it tried to evade his supervision, he stopped it by legal proceedings, setting up and recovering full ownership. In his petition in said other suit to establish his full ownership, he alleged the then present value to be $86,000. When he entered into this contract involved herein he alleged the property was in bankruptcy, and at one time owed an indebtedness of $40,000. We do not find the contract, therefore, to be ambiguous or unreasonable, but to the contrary, the same is plain and has inured great benefit to the appellant New Casino, Inc., through the splendid efforts and successful management of appellant George T. Smith. We, therefore, find that the fact there was no agreement on the part of New Casino, Inc., to pay said 3% rental on annual gross income above $55,000 becomes immaterial when its acts and conduct show the adoption of said lease. Phil H. Pierce Co. v. Rude, Tex.Civ.App., 291 S.W. 974, writ dismissed; Aransas Pass Harbor Co. v. Manning, 94 Tex. 558, 63 S.W. 627; McDorman v. Goodell, Tex.Civ. App., 69 S.W.2d 428.

■ This contract was executed for the benefit of both the appellants on one side and the appellee City of Fort Worth on the other. They all acted under it; neither of them, therefore, could repudiate it. Doty v. Barnard, 92 Tex. 104, 47 S.W. 712; National Aid Life of Oklahoma City v. Adams, Tex.Civ.App., 157 S.W.2d 957, writ dismissed.

■ Under such a state of facts we find that the statute of frauds, Vernon's Ann. Civ.St. art. 3995, will not apply. Folmar

v. Thomas, Tex.Civ.App., 196 S.W. 861; Showalter v. Macdonell, 83 Tex. 158, 18 S.W. 491.

 Appellant, New Casino, Inc., in Points 5 and 6, complains of the way and manner the trial court computed the interest covering the calendar year and in allowing interest for the last 3 months in 1945. We overrule these contentions because we find that appellee plead for the full recovery of 6% interest and there was no exception taken to it. We, therefore, find the interest in the judgment properly computed under Article 5070, R.C.S.

Appellant, New Casino, Inc., in Point 9, objects to the failure of the trial court's judgment to provide that appellant upon paying said judgment would have a right to remove this property from the premises of the City. We find the appellant will have such a right to remove this property from said premises according to the terms and conditions as set out in said contract, upon its payment of the judgment in full, the City having only a lien and a judgment of foreclosure against same.

We come now to appellant George T. Smith's brief, which recites 6 points of error. In sustaining Point 2, we automatically dispose of the other 5, except insofar as they have been discussed heretofore. Point 2 is as follows:

"The Court erred in rendering judgment against George Smith as a principal and as an original obligee for percentage rentals under the City lease, the Court having found that New Casino, Inc. assumed the lease."

We find, under the terms of the contract, that if the contract was transferred to a corporation, "that the lessee herein shall not be personally liable for any of the terms and agreements." Since we have found that New Casino, Inc. assumed the lease and have designated it as the corporation which was to be formed for the purpose to carry out the terms of the contract, and to carry on the business of the Casino, we find that such action by the same token relieves Smith from the contractual obligations under the contract. If such term was not in the contract, then he

might be held jointly and severally liable under some of the above authorities quoted. We, therefore, reverse and render that portion of the judgment that obligates George T. Smith jointly and severally liable, and release him personally from said judgment, but in so releasing said appellant Smith personally, we do not release the appellant New Casino, Inc., nor do we release the foreclosure proceedings against the property located on appellee's land.

In view of the fact the judgment of the trial court is affirmed in part and reversed and rendered in part, necessitates our overruling appellee's motion for 10% penalty against appellants, under Rule 438, Texas Rules of Civil Procedure. In all other respects, the judgment of the trial court is affirmed.