**T. A. PRESTON, Jr., Appellant,**

v.

**FIRST STATE BANK OF AMARILLO et al., Appellees.**

**No. 7029.**

Court of Civil Appeals of Texas.

Amarillo.

Feb. 27, 1961.

Rehearing Denied April 3, 1961.

R. C. Hamilton, Amarillo, for appellant.

Lumpkin, Watson, Dunlap & Smith, Harris E. Lofthus, Amarillo, for appellees.

DENTON, Chief Justice.

This suit was originally instituted as a Bill of Interpleader by the appellee First State Bank of Amarillo against appellant T. A. Preston, Jr. and Norman Burnett and wife, Win Burnett, appellees, to determine whether Preston or the Burnetts were the owners of the sum of $3,135 held by the bank. Both Preston and the Burnetts answered and by cross action each have separately sued, demanding payment of the above stated sum. A jury was empaneled but on completion of the testimony the trial court determined there was no issue of fact to be presented to the jury except that of attorney's fees claimed by the bank. Upon an agreement by attorneys of the bank

and the Burnetts concerning the bank's attorney's fees, over objection of appellant, the jury was dismissed and the trial court entered its judgment. The trial court held the Bill of Interpleader was properly maintained; that the money which had been placed into the registry of the court by the bank was to be paid to the Burnetts, less court costs and $500 attorneys' fees from the bank's attorneys. It is from this judgment that Preston duly perfected this appeal.

The material facts are not in dispute. Mrs. Burnett and Preston became engaged in a gin rummy game in which money was bet. After the two played the game for some 15 hours Preston and a bystander had apparently won $3,135 from Mrs. Burnett. For the purpose of paying this debt Mrs. Burnett then signed two personal checks made to the order of cash and drawn on the appellee bank. One check was in the amount of $3,035 and the other check was for $100. A Mr. Patton was then sent to the bank for the purpose of exchanging the two checks for cash. A bank official questioned the propriety of cashing the checks for such a large amount of money. Thereupon the bank official contacted Mrs. Burnett by telephone and obtained her permission to exchange the two checks for a cashier's check payable to the order of Mrs. Burnett for the sum of $3,135. Patton returned the cashier's check to the house where the game had been played and handed it to either Mrs. Burnett or Preston. Preston testified Mrs. Burnett endorsed the check and handed it to him (Preston). Mrs. Burnett testified her signature was not on the back of the cashier's check, but she did not categorically deny endorsing the check. Upon Preston's request Patton and Mrs. Burnett then proceeded to the bank with the cashier's check for the apparent purpose of exchanging it for cash which was to be returned to Preston. Upon arrival at the bank Mrs. Burnett refused to go in and Patton then drove to his place of business. There Mrs. Burnett proceeded to tear the cashier's check into some 14 small pieces and left them in the

floor of Patton's automobile. Sometime later Preston found these pieces and pasted the check together and then presented it to the bank for payment. Payment was refused and Mrs. Burnett and her attorney later directed the bank to stop payment on the check. The proceedings before us then ensued.

Preston contends the cashier's check represented a primary obligation of the bank and not an obligation of Mrs. Burnett, who purchased the check. Counsel for Preston conceded in his oral argument that if the cause of action of Preston against the bank had been founded on an ordinary check as distinguished from a cashier's check, he could not prevail because of the universally accepted rule against recovery of gambling debts. He argues that a cashier's check is the substantial equivalent of a certified check, and is not subject to countermand or stop payment by the payee as can be done on an ordinary check by the drawer. He contends that as a holder of a cashier's check endorsed by the payee, Mrs. Burnett, he can make out his case against the bank for the money represented by the check without having to refer to the admitted gambling transaction.

Preston relies especially on Reynolds v. Gregg, Tex.Civ.App., 258 S.W. 1088 (no writ history). This case involved an owner of vendor's lien notes who transferred them to another in payment of a gambling debt. In a suit brought by the assignee of the notes against the maker, the court held the maker could not set up the gambling transaction as a defense. The court there reasoned the assignee's cause of action was upon the notes and not upon the gambling debt. Therefore the cause of action could be proved without having to prove the illegal transaction in which the notes were assigned. We conclude the Reynolds case, supra, is distinguishable from the case before us. The law relative to the nature of title involving vendor's lien notes and negotiable instruments such as cashier's checks is clearly different. We think it is

apparent that the nature of a cashier's check distinguishes it from the rule laid down in the Reynold's case.

Our next inquiry is to ascertain the basic difference, if any, between a so-called ordinary check and a cashier's check. This question was answered by the Texas Commission of Appeals in State v. Tyler County State Bank, 277 S.W. 625, 627, 42 A.L.R. 1347, rehearing denied 282 S.W. 211, 45 A.L.R. 1483. There the court stated:

"An ordinary check is simply a written order of a depositor to his bank to make a certain payment, and is executory in its nature. A cashier's check is one issued by the authorized officer of a bank directed to another person evidencing the fact that the payee is authorized to demand and receive upon presentation from the bank the amount of money represented by the check, and like an ordinary one, it is also executory in its nature and revocable at any time before the bank has paid it."

We therefore conclude that so far as the rights of the parties here are concerned and more particularly relative to the right of the bank and Mrs. Burnett to stop payment on the check, there is no substantial difference between an ordinary check and a cashier's check.

■ As a general rule a drawer of a check can revoke it or stop payment at any time before the bank's certification, acceptance or payment of the check unless it has come into the possession of a bona fide holder for value. 9 C.J.S. Banks and Banking § 344, page 692 and Lipshitz v. Lindsay Nat. Bank, Tex.Civ.App., 33 S.W. 2d 874 (writ refused). It has also been held that when a creditor accepts the check of another in payment of an obligation, the check amounts only to a conditional payment of the obligation. Upon the check being dishonored by non-payment, the original debt still remains. State v. Tyler County State Bank, supra; Meaders v. Biskamp, 159 Tex. 79, 316 S.W.2d 75.

■ In order to recover here Preston must show himself to be a holder in due course. All authorities agree that one who received a negotiable instrument in settlement of a gambling debt is not a holder in due course for value. 38 C.J.S. Gaming § 22, page 95; Nielsen v. Planters' Trust & Savings Bank of Opelousas, 183 La. 645, 164 So. 613. Preston admitted the debt owed him by Mrs. Burnett was the result of a gambling transaction. Therefore in the eyes of the law he paid no value for the check given for the gambling indebtedness. Mashek v. Leonard, Tex.Civ.App., 186 S.W.2d 745 (dismissed).

■ Reduced to its simplest terms, appellant urges that his suit is against the bank for its failure to pay the cashier's check; that this action is based on the fact he is the holder of the check and that his gambling venture with Mrs. Burnett does not enter into this case. In our opinion the mere converting of an ordinary check into a cashier's check does not alter the fact that both instruments do in fact represent a gambling debt. Preston is not seeking recovery of the cashier's check. He sues for the money it represents. Thus, the cashier's check having been given in payment of the gambling debt, Preston's claim to the money it represents fails for lack of lawful consideration. It is further urged that if Mrs. Burnett is allowed to recover, the court will be the instrument through which she recovers money she had paid for gambling losses. This is not so for the reason the deposit made with the bank and the obtaining of the cashier's check representing that money on deposit are entirely legal transactions.

The judgment of the trial court is affirmed.