**Frank WERTZ, Petitioner,**

v.

**RICHARDSON HEIGHTS BANK AND TRUST, Respondent.**

No. B–3544.

Supreme Court of Texas.

May 2, 1973.

Rehearing Denied June 27, 1973.

Andress & Woodgate, William Andress, Jr., Dallas, for petitioner.

Saner, Jack, Sallinger & Nichols, H. Louis Nichols, William P. Fonville, Dallas, for respondent.

DENTON, Justice.

Petitioner Frank Wertz filed suit against Richardson Heights Bank and Trust, Hillcrest State Bank and William E. Baker, to recover damages for the dishonoring of a cashier's check. After trial before the court without a jury, judgment was entered in favor of Wertz against Baker for the amount owed by Baker to Wertz, and against the Richardson Heights Bank for the amount of the cashier's check, to-wit, $1505.00. No recovery was had against the Hillcrest State Bank. From this judgment only the Richardson Heights Bank and Trust has appealed. The court of civil appeals reversed and rendered judgment that the plaintiff take nothing. 482 S.W. 2d 692. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

The facts are not materially disputed. Wertz was a general agent for the American National Insurance Company, and Baker was his assistant. Prior to August 1, 1970, Baker became indebted to American General Insurance Company in the amount of $1505. Wertz guaranteed payment of this indebtedness evidenced by three promissory notes. Baker defaulted and Wertz paid the notes in full, and in turn received the notes from American National. Subsequently, Baker gave Wertz his personal check for $1505 drawn on the Richardson Bank, dated August 15, 1970, payable to the order of American National Insurance Company. On August 10, 1970, five days before the check was delivered to Wertz, Baker ordered the Richardson Bank to stop payment on the August 15 check. On several successive days a secretary of the Wertz Agency called the Richardson Bank to inquire whether Baker's check was good. On each of these occasions she was advised it was not. However, on August 25, 1970, the bank advised the agency's secretary that the check was good. She stamped the following endorsement upon the check:

Pay to the order of
HILLCREST STATE BANK
AMERICAN NATIONAL INSURANCE COMPANY
For Deposit Only

Thereupon, she took Baker's check to the Richardson Bank and exchanged it for a cashier's check from that bank, dated August 25, 1970, payable to the order of "American National Insurance Company for deposit only to Hillcrest State Bank", in the sum of $1505. The cashier's check was immediately deposited in the Hillcrest Bank to the account of American National Insurance Company. Subsequently, Wertz delivered the notes to Baker. On August 27, 1970, the Richardson Bank wrote a letter to Wertz, with a copy to American National Insurance Company, asking that the cashier's check be returned to the bank because Baker's check had been paid by mistake, in that Baker had in fact given the bank an order to stop payment on his check. On August 31, 1970, the Richardson Bank wrote the American National Insurance Company, with a copy to Wertz, stating that a stop payment order had been placed on the cashier's check. The cashier's check was returned to the Hillcrest Bank on September 10, 1970, marked "payment stopped".

The court of civil appeals has held that the bank was authorized to stop payment on the cashier's check which it had issued. The court relied upon State v. Tyler County State Bank, 277 S.W. 625, 627 (Tex. Com.App.1925), and Preston v. First State Bank of Amarillo, 344 S.W.2d 724 (Tex.Civ. App. writ ref'd n. r. e.) for the proposition that the cashier's check, like an ordinary one, is also executory in its nature and revocable at any time before the bank has paid it. The Tyler County State Bank case was a suit filed by the State as payee against the bank as the drawer and drawee of certain cashier's checks when those checks were never paid on account of the insolvency of the bank. The court held the obligation of

the bank evidenced by the cashier's check could be discharged only by the payment in money to the holder of the cashier's check. That case is not authority for the proposition that an issuing bank may stop payment on its cashier's check after it has been issued and delivered. The holding in State v. Tyler County State Bank, *supra,* and Preston v. First State Bank of Amarillo, *supra,* that a cashier's check like an ordinary one, is also executory in its nature and revocable at any time before a bank has paid it is disapproved.

A cashier's check is defined as a bill of exchange drawn by a bank upon itself and accepted in advance by the act of its issuance and not subject to countermand by either its purchaser or the issuing bank. Tarrant Wholesale Drug Co. v. Kendall, Tex.Civ.App., 223 S.W.2d 964 (n. w. h.). Ross v. Peck Iron & Metal Co., 264 F.2d 262 (4 Cir. 1959); Causey v. Eiland, 175 Ark. 929, 1 S.W.2d 1008; State of Pa. v. Curtiss Nat. of Miami Springs, Fla., 427 F.2d 395 (5 Cir. 1970), 10 Am. Jur.2d Banks § 643 (p. 614). As such, the bank's liability on the check is governed by the Uniform Commercial Code, which was adopted in Texas in 1965 and became effective June 30, 1966. Under the code the bank's issuance of the check, which by definition is also acceptance, constituted an agreement by the bank to honor the check as presented. Texas Uniform Commercial Code § 3.410, V.T.C.A. The rule may thus be stated that a cashier's check is accepted for payment when issued. See, Mellon Nat. Bank v. Citizens Bank & Trust Co., 88 F.2d 128 (8 Cir. 1937), cert. denied, 302 U.S. 702, 58 S.Ct. 21, 82 L.Ed. 542.

Under the provision of Texas Uniform Commercial Code § 4.303, a stop order, whether or not effective under other rules of law to terminate or suspend the bank's right or duty to pay an item, comes too late to terminate or suspend such right or duty if it is received after the bank has accepted or certified the item. Since a cashier's check is accepted when issued, Sec. 4.-303, *supra,* has the effect of preventing a bank to stay payment on a cashier's check once it has been issued.

In support of its position the bank and the court of civil appeals relies on Texas Uniform Commercial Code § 4.-403 which is entitled "Customers Right to Stop Payment". This section authorizes a customer to order the bank to stop payment of any item payable for his account. A cashier's check is not one payable for the customer's account but rather for the bank's account. It is the bank which is obligated on the check, not the customer. The petitioner here, the holder of the cashier's check and Baker's check which formed the consideration for the cashier's check, can not be charged with the failure of the bank to timely respond to Baker's stop payment order.

The court of civil appeals further held that since Wertz was neither payee nor endorsee of either check he was not a holder in due course, and whatever rights or ownership he might have in either check was subject to the defenses of the bank; and that the trial court was in error in concluding Wertz was the "beneficial owner" of the cashier's check. The Texas Uniform Commercial Code § 3.302, does not require that the name of the holder be placed in the instrument. It is undisputed that Wertz paid American National the full amount of the notes and surrendered the notes to Baker. As a holder for value, Wertz was a holder in due course under Texas Uniform Commercial Code § 3.302. The cashier's check was made payable to the order of "American National Insurance Company for deposit only to Hillcrest State Bank" at the request of Wertz's secretary, and was immediately deposited to Wertz's Agency account. There is ample evidence to support the trial court's conclusion that Wertz was also the "beneficial owner" of the cashier's check as well as the holder in due course.

The judgment of the court of civil appeals is reversed and that of the trial court is affirmed.

WALKER, J., dissents with opinion in which STEAKLEY and REAVLEY, JJ., join.

WALKER, Justice (dissenting).

I respectfully dissent. It seems to me that the question in the case is not one of authority to "stop payment" on the cashier's check. A stop payment order is frequently given by the drawer of an instrument to the drawee instructing the latter not to apply the drawer's funds to payment of the item. The problem of stopping payment also arises occasionally in cases where a cashier's check is purchased by one person (the remitter) and made payable to another (the payee). After the check has been delivered by the remitter to the payee in payment of some real or fancied obligation, the remitter may, for one reason or another, wish to prevent payment of the check and to that end instruct the bank to stop payment. By issuing the check, the bank undertakes and becomes primarily liable to pay the payee on demand the amount of money represented by the check. Once this legal relationship is established between the bank and the payee, the remitter obviously has no authority to order the bank not to pay the cashier's check. And the fact that there is some difficulty or misunderstanding between the remitter and the payee does not warrant the bank's repudiating its obligation on the check. That is the situation generally involved in cases where the courts have said that a cashier's check is not subject to countermand by the purchaser or the issuing bank.

That is not, however, the situation in the present case. No one is attempting to order another person not to pay, and respondent is not denying liability on the check because it was requested to do so or because of any claim or right asserted by another person. Respondent has repudiated its obligation to pay on the ground that it has a legal defense to liability on the check, and the question to be decided is whether the asserted defense is good. In my opinion it is not correct to say that a bank can *never* legally refuse to pay one of its cashier's checks. For example, a bank from which a cashier's check has been procured by fraud would certainly be entitled to set up the fraud and defeat liability as long as the check remained in the hands of the payee who perpetrated the fraud. The text writers agree that a bank may properly refuse to pay its cashier's check to the payee on the ground of failure of consideration or fraud. 5B Michie, Banks and Banking, § 251 (Supp.1972); 7 Zollman, Banks and Banking, §§ 4694, 4695. In Dakota Transfer & Storage Co. v. The Merchants Nat'l Bank and Trust Co., N.D., 86 N.W.2d 639, it was held that a bank could refuse to pay a cashier's check that was still in the hands of the original payee where there was no consideration given for the check, the payee had not changed his position in reliance thereon, and no holder in due course was involved. A similar holding was made in National Bank of California v. Miner, 167 Cal. 532, 140 P. 27.

If respondent had given petitioner cash rather than a cashier's check and petitioner had not changed his position in any way, the bank would have been entitled to recover the money paid in violation of its customer's stop-payment order. See Murfreesboro Bank & Trust Co. v. Travis, 190 Tenn. 429, 230 S.W.2d 658. The rule is stated in 10 Am.Jur.2d, Banks, § 654, as follows:

> In accord with the well-settled rule which permits the recovery of money paid to another under mistake of fact, even though that mistake was due to negligence, where there has been no change in the position of the other parties making it unjust to require a refund, it is generally held that a bank which pays a check after receiving proper notice countermanding the order may recover the money thus paid out as money paid under a mistake of fact, and that negligence in paying the check after receiving the notice will not prevent the

bank from recovering, at least if the holder has not changed his position after receiving payment or is not a bona fide holder for value.

Since respondent could recover the cash it had paid in the circumstances just mentioned, it should also be entitled to refuse payment of its own cashier's check issued under the same circumstances. To recover then petitioner must show either that he is a holder in due course or that he so changed his position in reliance on the cashier's check that respondent is precluded from denying liability thereon.

In my opinion petitioner is not a holder in due course within the meaning of the Uniform Commercial Code. The term "holder in due course" is defined by § 3.-302 as "a holder" who takes the instrument for value, in good faith and without notice. By the express terms of § 1.201 and subject to certain exceptions not material here, the word "holder" wherever used in the Uniform Commercial Code "means a person who is in possession of a document of title or an instrument or an investment security drawn, issued or endorsed to him or to his order or to bearer or in blank." The cashier's check involved in the present case is payable to the order of American National Insurance Company for deposit only to Hillcrest State Bank. It is not payable to petitioner or his order. It is not payable to bearer. It was not endorsed to petitioner. Since petitioner is not a "holder," he cannot be a "holder in due course."

Petitioner's right to recover thus turns upon whether he has so changed his position in reliance upon the check that the bank should be precluded from denying liability thereon. On this point the Court of Civil Appeals reasoned and held as follows:

Wertz cannot say that he paid the insurance company in reliance upon either Baker's check or the cashier's check, or that he has been damaged by anything

the Richardson bank did, because he had already paid the insurance company and received the notes from it before either check was issued. . . .

\*   \*   \*   \*   \*   \*

Wertz argues that he changed his position in reliance upon the issuance of the cashier's check by delivering the notes to Baker, and was thus damaged by the Richardson bank's refusal to honor its cashier's check. However, he sustained no damage or loss thereby, because he recovered judgment against Baker for the amount of said notes together with $1,000 exemplary damages, from which judgment no appeal was taken.

Since petitioner does not question the holding of the Court of Civil Appeals that he did not make a detrimental change of position in reliance on the cashier's check, I necessarily accept it as sound. I would affirm the judgment of the Court of Civil Appeals.

STEAKLEY and REAVLEY, JJ., join in this dissent.