10 Mass. App. Ct. 32 (1980)
405 N.E.2d 666
TRAVI CONSTRUCTION CORPORATION
vs.
FIRST BRISTOL COUNTY NATIONAL BANK; SHEPPARD A. LESSER, third-party defendant.
Appeals Court of Massachusetts, Norfolk.
February 12, 1980.
June 12, 1980.
Present: GREANEY, ROSE, & PERRETTA, JJ.
Paul F. Lorincz for the First Bristol County National Bank.
Thomas M. Barron for the plaintiff.
PERRETTA, J.
This appeal is from a summary judgment granted in favor of the plaintiff Travi Construction Corporation against the defendant First Bristol County National Bank. Mass.R.Civ.P. 56, 365 Mass. 824 (1974). In its action Travi sought to recover the sum of $7,500, representing the face amount of a cashier's check issued by the Bank to Travi as payee. The Bank stopped payment on this check because Travi purchased it with a personal check it had received from the third-party defendant Lesser. Lesser's check was drawn on the Bank, but he placed a stop-payment order on his check prior to Travi's presentment of it at the Bank in exchange of the cashier's check. Due to an error on its part, the Bank accepted Lesser's check and issued its cashier's check to Travi. When the cashier's check was subsequently *33 presented to the Bank by Travi's bank, the Bank refused to honor it, and Travi brought suit. The Bank argues that it can refuse to honor its cashier's check for a failure of consideration when it is presented by a party to the instrument with whom the Bank has dealt. We agree, and we reverse the judgment.
There are two conflicting lines of authority on the question whether a bank can dishonor its cashier's check. Those jurisdictions which apply a flat prohibition against dishonor of a cashier's check by the issuing bank do so on the reasoning that a cashier's check is a bill of exchange or draft drawn by a bank upon itself and accepted in advance by the act of its issuance. Because a stop-payment order must be made prior to acceptance of the instrument, Uniform Commercial Code, § 4-303(a), a cashier's check cannot be dishonored.[1] Some jurisdictions refuse to recognize such an iron-clad rule, and they allow a bank to dishonor its cashier's check in certain situations, primarily a failure of consideration. In such a case the bank may assert its own defenses against one who is not a holder in due course.[2]
*34 This conflict among jurisdictions is treated by Brady on Bank Checks, wherein it is concluded, at § 20.12, at 20-30  20-31 (5th ed. 1979), "While courts have not set forth a clear rule on this matter, it would seem that courts which hold flatly that payment may not be stopped are in error.... In short, the rule that payment may not be stopped on a cashier's check should not be regarded as an immutable principle; under some situations, it would seem that the issuing bank ought to be able to resist payment." To each dispute Brady would apply the "finality of payment" rule found in § 3-418 of the Uniform Commercial Code.[3] Jurisdictions eschewing the flat prohibition against dishonor take notice of the fact that the analysis of the question employed by conflicting courts depends upon the premise that a cashier's check is a draft. For example, in TPO, Inc. v. Federal Deposit Ins. Corp., 487 F.2d 131, 135-136 (3d Cir.1973), the court observed that the "acceptance upon issuance" reasoning fails when § 3-118(a) of the Uniform Commercial Code is applied to a cashier's check. That section of the Code states: "Where there is doubt whether the instrument is a draft or a note the holder may treat it as either. A draft drawn on the drawer is effective as a note." The observation that a cashier's check is a negotiable promissory note and not a draft is, however, by no means central to the rule that a bank may, in certain circumstances, dishonor its cashier's check. These cases turn on whether the holder of the check is a holder in due course because "whether a bank is considered to have accepted a cashier's check, as a draft, by the act of its issuance, or is considered to be the maker of a note, it is primarily obligated upon the instrument." Banco *35 Ganadero y Agricola, S.A. v. Society Natl. Bank, 418 F. Supp. 520, 523 (N.D. Ohio 1976). See also 6 E. Bender's Uniform Commercial Code Service, Reporter  Digest § 2-1194 (Willier & Hart, 1980) ("This difference alone would not alter the result, however, since the liability of an acceptor is precisely the same as that of a maker. See Section 3-413[1]").
We are persuaded that an issuing bank may refuse to honor its cashier's check because of a failure of consideration when the check is held by a party to the instrument with whom it has dealt. We do not look to either G.L.c. 106, § 3-118(a) or § 3-418, in reaching this conclusion. Instead, we rely upon the fact that in this limited situation the policy concerns which justify a rule against dishonor do not exist, and there is overwhelming reason for an exception to the rule. As stated in TPO, Inc., 487 F.2d at 135, "there are no third parties, or customers of the Bank, or holders in due course whose rights are involved.... Hence, the strong considerations of public policy favoring negotiability and reliability of cashier's checks are not germane." Compare Dziurak v. Chase Manhattan Bank, 58 App. Div.2d 103, 107 (N.Y. 1977). Moreover, where the bank, and not its customer, stops payment on a cashier's check, the bank's reputation and credit are not exposed to third-party reprobation. See 6 Michie, Banks and Banking 371 (1975). Compare White & Summers, Uniform Commercial Code 579, n. 91 (1972) (concern for a bank's reputation and credit may be legitimate where a customer can demand that its bank stop payment on a cashier's check).
These policy concerns are not at issue in the present case. The Bank received Lesser's stop-payment order on March 30, 1978, at 5:15 P.M. Travi presented Lesser's check at the Bank's branch office on Friday, March 31, sometime between 12:00 M. and 1:00 P.M. The cashier's check was presented to the Bank for payment by Travi's bank on or about April 4. Lesser's account cannot be charged; the Bank admits his stop-payment order was timely made.[4] Travi has *36 received no funds on account of the cashier's check which bears the stamped legend "Payment Stopped." The check cannot fall into the hands of an innocent third party. In this situation, we perceive no policy need for application of a stringent rule prohibiting the Bank's dishonor of its cashier's check.
The issue for resolution is whether the Bank has a defense which it can assert against Travi's presentment of the check for payment. Travi argues that it does not. It claims that the pleadings, the affidavits, and the Bank's responses to interrogatories demonstrate that there is no dispute that Travi took the cashier's check in good faith and without notice of the fact that Lesser had stopped payment on his check. We reject Travi's assessment of the affidavits,[5] but even were we to agree that Travi holds the check as a holder in due course, Travi would not be sheltered from the Bank's defense to payment.
The Bank received Lesser's order before it issued its check to Travi, and it has no right to charge Lesser's account with the amount of his check. "A complete failure of consideration for the [cashier's] check resulted and the bank had the *37 right to refuse to honor it when presented by the payee." Wilmington Trust Co. v. Delaware Auto Sales, 271 A.2d 41, 42 (Del. 1970). While the defense of a failure of consideration cannot be asserted against a holder in due course, compare G.L.c. 106, § 3-305(2) with §§ 3-306 and 3-408, even a holder in due course takes an instrument subject to the defenses of any party to the instrument with whom the holder has dealt, G.L.c. 106, § 3-305(2). See Waltham Citizens Natl. Bank v. Flett, 353 Mass. 696, 699 (1968). See also Wilmington Trust, supra; Brotherton v. McWaters, 438 P.2d 1, 4 (Okla. 1968); Brady on Bank Checks, supra at 9-7  9-8, 15-3; Quinn, UCC Commentary and Law Digest par. 3-305(A)(5) (1978).
The Bank had a right to refuse to honor its cashier's check because of a failure of consideration when the check was presented by Travi, a party to that instrument with whom the Bank had dealt. The foregoing analysis obviates the need to consider the Bank's remaining contention[6] because it establishes that summary judgment against Travi is appropriate under Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974).
The order allowing Travi's motion for summary judgment and the judgment are reversed. The Superior Court is to enter a new judgment dismissing the action.
So ordered.
NOTES
[1] See Swiss Credit Bank v. Virginia Natl. Bank-Fairfax, 538 F.2d 587 (4th Cir.1976); State v. Curtiss Natl. Bank, 427 F.2d 395 (5th Cir.1970); Munson v. American Natl. Bank & Trust Co., 484 F.2d 620 (7th Cir.1973); Texaco, Inc. v. Liberty Natl. Bank & Trust Co., 464 F.2d 389 (10th Cir.1972); Kaufman v. Chase Manhattan Bank, Natl. Assn., 370 F. Supp. 276 (S.D.N.Y. 1973); Able & Associates, Inc. v. Orchard Hill Farms, 77 Ill. App.3d 375 (1979), overruling Bank of Niles v. American State Bank, 14 Ill. App.3d 729 (1973); Meador v. Ranchmart State Bank, 213 Kan. 372 (1973); State ex rel. Chan Siew Lai v. Powell, 536 S.W.2d 14 (Mo. 1976); National Newark & Essex Bank v. Giordano, 111 N.J. Super. 347 (1970); Moon Over the Mountain, Ltd. v. Marine Midland Bank, 87 Misc.2d 918 (N.Y. Civ. Ct. 1976); Wertz v. Richardson Heights Bank & Trust, 495 S.W.2d 572 (Tex. 1973).
[2] See TPO, Inc. v. Federal Deposit Ins. Corp., 487 F.2d 131 (3d Cir.1973); Wilmington Trust Co. v. Delaware Auto Sales, 271 A.2d 41 (Del. 1970); Tropicana Pools, Inc. v. First Natl. Bank, 206 So.2d 48 (Fla. App. 1968); Wright v. Trust Co. of Georgia, 108 Ga. App. 783 (1963); State Bank v. American Natl. Bank, 266 N.W.2d 496 (Minn. 1978); Dakota Transfer & Storage Co. v. Merchants Natl. Bank & Trust Co., 86 N.W.2d 639 (N. Dak. 1957).
[3] General Laws c. 106, § 3-418, inserted by St. 1957, c. 765, § 1, provides: "Except for recovery of bank payments as provided in the Article on Bank Deposits and Collections (Article 4) and except for liability for breach of warranty on presentment under section 3-417, payment or acceptance of any instrument is final in favor of a holder in due course, or a person who has in good faith changed his position in reliance on the payment." Brady suggests that because in Rockland Trust Co. v. South Shore Natl. Bank, 366 Mass. 74, 78 (1974), the court hinted that the rule applied to certified checks, it would also be applicable to cashier's checks.
[4] Lesser's order, although timely under G.L.c. 106, § 4-303, was received by the Bank after the "cut-off" time of 4:30 P.M. for its computer center to process the work for that day. The order was then posted at the close of business on March 31. The Bank's mistake occurred when, for some reason not revealed on the record before us, Lesser's order was not manually brought forward on his account on the morning of March 31.
[5] Lesser alleged in his affidavit that he notified Travi's bookkeeper and president by telephone and "explained that I was stopping payment on my check" to Travi. Travi's bookkeeper and president denied any such notice from Lesser in their affidavits. Travi claims that a factual dispute as to its status as a holder in due course does not exist because the Bank's answers to interrogatories demonstrate that Lesser stopped payment on his check at 5:15 P.M. on March 30, after his alleged notice to Travi's employees. Travi concludes that, even if Lesser's affidavit is accepted, it shows only a threat or indication that payment on his check might be stopped, and Travi could not have had knowledge of the order when it presented Lesser's check. Lesser's affidavit was sufficient to dispute Travi's status as a holder in due course on the elements of good faith and notice. G.L.c. 106, §§ 1-201(19) and (25). See Industrial Natl. Bank v. Leo's Used Car Exchange, Inc., 362 Mass. 797, 800-802 (1973). See also Bowling Green, Inc. v. State Street Bank & Trust Co., 425 F.2d 81, 85 (1st Cir.1970).
[6] The Bank also complains of the order denying its motion to amend its answer to include a compulsory counterclaim against Travi. Mass.R.Civ. P. 13(a), 365 Mass. 758 (1974). The basis for the counterclaim was that when Travi endorsed Lesser's check, it engaged that upon dishonor it would pay the instrument according to the tenor at the time of its endorsement. G.L.c. 106, § 3-414(1). See Community Natl. Bank v. Dawes, 369 Mass. 550, 561 (1976).