**FLATIRON LINEN, INC., a Colorado corporation, Plaintiff–Appellant,**

v.

**FIRST AMERICAN STATE BANK, a Colorado state banking corporation, and Colorado National Bank, a bank corporation, Defendants–Appellees.**

No. 98CA0466.

Colorado Court of Appeals,
Div. III.

Sept. 16, 1999.

As Modified on Denial of Rehearing
Oct. 21, 1999.

Certiorari Granted June 5, 2000.

Levi Martinez, Vice President of Flatiron Linen, Inc., for Plaintiff–Appellant Flatiron Linen, Inc., pursuant to § 13–1–127(2), C.R.S.1999.

Aronowitz & Ford, LLP, Timothy C. Ford, Denver, Colorado, for Defendant–Appellee First American State Bank.

Thomas J. Bissell, Denver, Colorado, for Defendant–Appellee Colorado National Bank.

Opinion by Judge ROY.

Plaintiff, Flatiron Linen, Inc., appeals the dismissal pursuant to C.R.C.P. 12(b)(5) of its claims against defendant, First American State Bank (the obligated bank), arising out of its refusal to honor its cashier's check. Plaintiff also appeals the summary judgment dismissing its claims against defendant, Colorado National Bank (the depositary bank),

arising out of the debiting of plaintiff's account following the failure of the obligated bank to honor its cashier's check. We affirm.

On October 16, 1996, Fluffy Reed Foundation, Inc., (FRF) issued a check drawn on its account at the obligated bank in the amount of $4,100 payable to plaintiff. The obligated bank dishonored that check because of insufficient funds and returned it to plaintiff. On October 17, 1996, FRF contacted the obligated bank and stopped payment on the previously dishonored insufficient funds check.

On March 26, 1997, an agent of plaintiff appeared at the obligated bank and exchanged the previously dishonored check for a cashier's check payable to plaintiff. In issuing the cashier's check, the teller failed to notice the stop payment order. The obligated bank recognized its mistake moments later.

Plaintiff deposited the cashier's check in its account at the depositary bank and immediately withdrew the funds. The depositary bank processed the cashier's check, but the obligated bank refused to pay. Consequently, the depositary bank debited plaintiff's account for the amount of the check and notified plaintiff of the debit.

Thereafter, plaintiff commenced this action and, as pertinent here, brought a claim against the obligated bank alleging that it had wrongfully or negligently dishonored its cashier's check. Plaintiff also asserted claims against the depositary bank for wrongfully or negligently debiting its account.

The depositary bank filed a motion to dismiss pursuant to C.R.C.P. 12(b)(5), claiming its actions were authorized by statute. The obligated bank moved for summary judgment pursuant to C.R.C.P. 56, arguing that it was entitled to dishonor the cashier's check for lack of consideration. The trial court granted both motions and certified these judgments as final pursuant to C.R.C.P. 54(b).

## I.

Plaintiff asserts that the defense of failure of consideration was not available to the obligated bank and that it was prohibited from dishonoring its own cashier's check. We disagree.

This issue is one of first impression, both in Colorado and in the country, under the recent amendments to the Uniform Commercial Code (UCC).

Cashier's checks have occupied a special place in commerce. That is, they are considered the equivalent of cash, or a cash substitute, and are frequently required in contracts in which a party is to surrender or deliver something of significant value upon receipt of payment, *e.g.*, a security interest, deed, or possession of personal property.

Cases involving a dishonor of a cashier's check arise from two basic scenarios. In the first, the cashier's check is issued at the request of a customer for payment to a third party and the customer then requests that the bank stop payment because of an asserted dissatisfaction with the underlying transaction. The second arises, as here, when the bank issues the cashier's check by mistake, or the consideration given for the cashier's check subsequently fails.

In the first scenario the bank must rely on its customer's defenses, and in the latter it asserts its own defenses. See generally B. Davis, *The Future of Cashier's Checks Under Revised Article 3 of the Uniform Commercial Code*, 27 Wake Forest L.Rev. 613 (1992).

Article 3 of the UCC, as originally proposed by the National Conference on Uniform State Laws, and as adopted in Colorado, was silent as to cashier's checks. *See* Colo. Sess. Laws 1965, ch. 330; Uniform Commercial Code 2A *Uniform Laws Annot.* (1991 master edition). Despite the silence of the UCC, a significant body of law developed with respect to the ability of banks to refuse payment of, or dishonor, their cashier's checks.

As to regular checks, the UCC permitted a customer to stop payment on a check provided the order was given a reasonable time prior to acceptance, or payment, by the customer's bank. Colo. Sess. Laws 1965, ch. 330, §§ 155-4-403, 155-4-303, at 1390-91.

A majority of the courts addressing the issue adopted a strict "cash equivalent" ap-

proach designed to implement the accepted view that cashier's checks were a cash substitute. Under this approach, a cashier's check is treated as a draft drawn by a bank upon itself and accepted upon issuance. Therefore, so goes the reasoning, a cashier's check could never be dishonored because, under the UCC, a stop payment order must be issued by the maker prior to acceptance of the instrument. *See Swiss Credit Bank v. Virginia National Bank–Fairfax,* 538 F.2d 587 (4th Cir.1976); *Able & Associates, Inc. v. Orchard Hill Farms of Illinois, Inc.,* 77 Ill. App.3d 375, 32 Ill.Dec. 757, 395 N.E.2d 1138 (1979); *Wertz v. Richardson Heights Bank & Trust,* 495 S.W.2d 572 (Tex.1973); see also S. Shapiro, Annotation, *Uniform Commercial Code: Bank's Right to Stop Payment on Its Own Uncertified Check or Money Order,* 97 A.L.R.3d 714 § 3[a]. Plaintiff asserts that *Hotel Riviera, Inc. v. First National Bank & Trust,* 768 F.2d 1201 (10th Cir.1985), which follows the majority position is dispositive. We conclude that *Hotel Riviera* is not persuasive, much less dispositive.

The following statement has been frequently cited as justification for the cash equivalent approach:

> A cashier's check circulates in the commercial world as the equivalent of cash. People accept a cashier's check as a substitute for cash because the bank stands behind it, rather than an individual. In effect, the bank becomes a guarantor of the value of the check and pledges its resources to the payment of the amount represented upon presentation. To allow the bank to stop payment on such an instrument would be inconsistent with the representation it makes in issuing the check. Such a rule would undermine the public confidence in the bank and its checks and thereby deprive the cashier's check of the essential incident which makes it useful.

*National Newark & Essex Bank v. Giordano,* 111 N.J.Super. 347, 351–52, 268 A.2d 327, 329 (1970).

Most of the courts adopting the "cash equivalent" position did not permit the obligated bank to assert its own defenses, including a lack of consideration and mistake. *See* D. Landy, *Failure of Consideration Is Not a Defense to a Bank's Refusal to Pay a Cashier's Check: Revised UCC § 3–411(C),* 115 Banking L.J. 92 (1998).

This "cash equivalent" approach has been criticized because the stop payment provisions of the UCC relied on by the courts were never meant to apply to cashier's checks. *See Farmers & Merchants State Bank v. Western Bank,* 841 F.2d 1433 (9th Cir.1987); see also L. Lawrence, *Making Cashier's Checks and Other Bank Checks Cost–Effective: A Plea for Revision of Articles 3 and 4 of the Uniform Commercial Code,* 64 Minn. L.Rev. 275 (1980). Indeed, the "cash equivalency" approach confuses a bank's refusal to pay its own obligation with a stop payment order under the UCC which, of course, it is not. One commentator has concluded that the "cash equivalency" approach did not survive the amendments to Article 3. B. Davis, *The Future of Cashier's Checks Under Revised Article 3 of the Uniform Commercial Code, supra.*

A second approach was to treat cashier's checks by applying ordinary rules relating to promissory notes. Under this view, courts allowed banks to dishonor cashier's checks and assert their own defenses in limited circumstances, such as when the holder of the cashier's check dealt directly with the bank or otherwise was not a holder in due course. *See Wilmington Trust Co. v. Delaware Auto Sales,* 271 A.2d 41 (Del.1970); *International Furniture Distributors, Inc. v. First Georgia Bank,* 163 Ga.App. 765, 294 S.E.2d 732 (1982).

Courts following the note approach reasoned that the strong policy considerations favoring negotiability of cashier's checks did not apply in circumstances in which the bank had dealt directly with the holder. *See Travi Construction Corp. v. First Bristol County National Bank,* 10 Mass.App. 32, 405 N.E.2d 666 (1980); *see also Rezapolvi v. First National Bank,* 296 Md. 1, 459 A.2d 183 (1983). This approach has been criticized because the obligation of the bank to pay is contingent on the status of the holder, that is, its defenses are not available against a holder in due course. *See Warren Finance, Inc. v. Barnett Bank,* 552 So.2d 194 (Fla.1989). This approach has, however, in our view, not

only survived, but has been incorporated into, the amendments to the UCC.

The National Conference on Uniform State Laws approved revisions of Articles 3 and 4 of the UCC in 1990, and Colorado adopted them in 1994. *See* Colo. Sess. Laws, 1994, ch. 159; Uniform Commercial Code, 2 *Uniform Laws Annot.* (1991 master edition). The term "cashier's check" is defined as "a draft with respect to which the drawer and drawee are the same bank or branches of the same bank." Section 4–3–104(g), C.R.S.1999.

Section 4–3–412, C.R.S.1999, sets forth the obligation of the issuer of a cashier's check, as follows:

> The issuer of a note or cashier's check or other draft drawn on the drawer is obligated to pay the instrument (i) according to its terms at the time it was issued or, if not issued, at the time it first came into possession of a holder, or (ii) if the issuer signed an incomplete instrument, according to its terms when completed, to the extent stated in sections 4–3–115 [incomplete instrument] and 4–3–407 [alteration]. The obligation is owed to a person entitled to enforce the instrument or to an indorser who paid the instrument under section 4–3–415 [obligation of indorser]. (emphasis added)

The official comment to § 4–3–412 provides, in pertinent part, that:

> Section 3–412 states the obligation of the maker of a note and is consistent with former Section 3–413(1). Section 3–412 also applies to the issuer of a cashier's check or other draft drawn on the drawer. Under former Section 3–118(a), since a cashier's check or other draft drawn on the drawer was 'effective as a note,' the drawer was liable under former Section 3–413(1) as a maker. Under Sections 3–103(a)(6) and 3–104(f) a cashier's check or other draft drawn on the drawer is treated as a draft to reflect common commercial usage, but the liability of the drawer is stated by Section 3–412 as being the same as that of the maker of a note rather than that of the drawer of a draft. Thus, Section 3–412 does not in substance change former law.

A "draft" is an order to pay and a "note" is a promise to pay. Section 4–3–104(3)(e), C.R.S.1999. The obligor on a negotiable instrument, which includes both drafts and notes, retains defenses which can be asserted against the holder or other person entitled to enforce the instrument. Section 4–3–305, C.R.S.1999.

The defenses available to the obligor against a holder in due course are limited to matters impacting the validity of the instrument at its inception, *e.g.,* fraud, illegality, and infancy. Section 4–3–305(a)(1), C.R.S. 1999. Against a holder not in due course, however, the defenses include those available to an obligor under a simple contract and recoupment. Sections 4–3–305(a)(2) and 4–3–305(3), C.R.S.1999. An obligor may not, however, benefit from the defenses of a third party unless the third party is joined in the action and personally asserts the defenses. Section 4–3–305(c), C.R.S.1999.

■ In addition, if a draft is paid or accepted by mistake, as in the mistaken belief that payment had not been stopped, the drawee bank may recover the amount of the draft from the person to whom, or for whose benefit, payment was made. Or, in the case of acceptance, the acceptance may be revoked. Section 4–3–418(a), C.R.S.1999. Indeed, the precise scenario involved in this case is considered in the official comments to § 4–3–418, that is, a bank issues a cashier's check by mistake in exchange for a check drawn on it upon which a stop payment order has issued. Section 4–3–418, C.R.S.1999 (Official Comment 2).

The amended code also penalizes the wrongful refusal of a bank to pay its cashier's checks, teller's checks, or certified checks under certain conditions. Section 4–3–411, C.R.S.1999. These three instruments are quite different. *See* §§ 4–3–104(g) (cashier's check); 4–3–104(h) (teller's check); and 4–3–409(d), C.R.S.1999 (certified check). For the purposes of a wrongful refusal to pay, however, the three instruments are treated the same.

Pursuant to § 4–3–411(c)(ii), C.R.S.1999, a bank may avoid expenses and consequential damages associated with its wrongful refusal

to pay an instrument if it has, and asserts, defenses it reasonably believes it, and apparently not a third party, has against the person entitled to enforce the instrument. Section 4–3–411, C.R.S.1999 (Official Comment 1).

Commentators have concluded that the amendments to Articles 3 and 4 do not prevent, or limit, the right of a bank *to assert its own defenses,* such as failure of consideration or mistake, to the payment of a cashier's check. H. Bailey & R Hagedorn, *Brady on Bank Checks* ¶ 26.13[2] (rev. ed.1998); T. Crandall, M. Herbert & L. Lawrence, *Uniform Commercial Code* § 14.4.5 (1996); B. Davis, *The Future of Cashier's Checks Under Revised Article 3 of the Uniform Commercial Code, supra* (cashier's check to be treated as note and defense of failure of consideration available except as against a holder in due course); D. Landy, *Failure of Consideration Is Not a Defense to a Bank's Refusal to Pay a Cashier's Check: Revised UCC § 3–411(c), supra* (defense still available in two-party transactions). Indeed, as earlier indicated, it would appear that the amendments to the UCC have adopted the pre-amendment note approach to cashier's checks.

We hold that, under the UCC, an obligated bank may assert the defenses of a lack of consideration or mistake against a holder not in due course of a cashier's check it has issued and refused to pay.

## II.

■ Plaintiff asserts that it was a holder in due course and that the obligated bank was, therefore, precluded from asserting any defenses other than those listed in § 4–3–305(a)(1), C.R.S.1999. We disagree.

In order to be a holder in due course, plaintiff was required to have taken the cashier's check for value pursuant to § 4–3–302(a)(2)(i), C.R.S.1999. However, there was no value or consideration supporting the obligated bank's issuance of the cashier's check because it was exchanged for the original check on which FRF had ordered a stop payment. *See International Furniture Distributors, Inc. v. First Georgia Bank, supra* (once customer stopped payment on check,

there was no consideration supporting bank's subsequent issuance of cashier's check to the payee in exchange for original check).

■ Furthermore, a payee on an instrument, such as plaintiff in this case, who deals directly with the drawer or issuer is not typically entitled to assert the rights of a holder in due course. *See* § 4–3–302, C.R.S. 1999 (Official Comment 4) (only in a small percentage of cases is it appropriate to allow the payee of instrument to assert rights as holder in due course); § 4–3–305, C.R.S.1999 (Official Comment 2) (in most cases, the holder in due course doctrine is irrelevant if defenses are being asserted against the payee of instrument); H. Bailey & R. Hagedorn, *Brady on Bank Checks, supra,* §§ 9.4, 9.6.

Because the obligated bank issued the cashier's check without consideration and because plaintiff was not a holder in due course, we conclude that the trial court was correct in concluding, as a matter of law, that the obligated bank could assert its defenses of a lack of consideration or mistake against the claim of the plaintiff for enforcement of the cashier's check.

## III.

Plaintiff next contends that the trial court erred in granting the depositary bank's motion to dismiss. Again, we disagree.

■ In ruling on a motion to dismiss for failure to state a claim, the trial court must accept the allegations of the complaint as true and determine whether those allegations, when viewed in a light most favorable to the plaintiff, entitle the plaintiff to relief. If relief could be granted under such circumstances, the complaint is sufficient. *Schlitters v. State,* 787 P.2d 656 (Colo.App.1989).

■ Plaintiff contends that when the depositary bank accepted the cashier's check and allowed plaintiff to withdraw funds equal to the amount of the check, it became the "owner" of the check and it had no right to charge back the amount of the check to plaintiff's account but instead was required to seek payment from the issuing bank.

Initially, we agree with the depositary bank's assertion that it acted as either a

"collecting bank" or a "depositary bank" in receiving plaintiff's deposit of the cashier's check. A "collecting bank" is "a bank handling an item for collection except the payor bank." Section 4–4–105(5), C.R.S.1999. A "depositary bank" is the "first bank to take an item even though it is also the payor bank, unless the item is presented for immediate payment over the counter." Section 4–4–105(2), C.R.S.1999.

Section 4–4–201(a), C.R.S.1999, provides in pertinent part as follows:

Unless a contrary intent clearly appears and before the time that a settlement given by a collecting bank for an item is or becomes final, the bank, with respect to the item, is an agent or subagent of the owner of the item and any settlement given for the item is provisional. This provision applies regardless of the form of indorsement or lack of indorsement and even though credit given for the item is subject to immediate withdrawal as of right or is in fact withdrawn. . . .

Here, plaintiff's complaint simply alleged that plaintiff negotiated the cashier's check at the depositary bank, that the parties intended that the depositary bank would become the owner of the cashier's check, or that its role would be something other than as an agent or subagent of plaintiff with respect to the instrument as set forth by statute. Indeed, plaintiff has admitted in its opening brief that it simply deposited the cashier's check in its account in the depositary bank and then immediately withdrew the face amount of the check. By its express terms, § 4–4–201(a) applies in such circumstances.

Plaintiff argues that the depositary bank became the owner of the cashier's check and cites to *Bromfield v. Cochran*, 86 Colo. 486, 283 P. 45 (1929). However, that case predates Colorado's adoption of the Uniform Commercial Code and, in our view, does not control.

Because § 4–4–201(a) applied to plaintiff's deposit of the cashier's check, settlement of that instrument was "provisional." Section 4–4–214(a), C.R.S.1999, provides, in turn, that:

If a collecting bank has made provisional settlement with its customer for an item and fails by reason of dishonor, suspension of payments by a bank, or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge-back the amount of any credit given for the item to its customer's account, or obtain refund from its customer, whether or not it is able to return the item, if, by its midnight deadline or within a longer reasonable time after it learns the facts, it returns the item or sends notification of the facts.

Under this provision, the depositary bank was entitled to charge or debit plaintiff's account and is not liable to plaintiff for doing so. Accordingly, the trial court acted properly in granting the depositary bank's motion to dismiss.

The summary judgments entered in favor of both the issuing and depositary banks are affirmed.

Judge JONES and Judge MARQUEZ concur.