24CA0002 Ent Credit v Sayre 08-01-2024 COLORADO COURT OF APPEALS Court of Appeals No. 24CA0002 Mesa County District Court No. 23CV30168 Honorable Brian J. Flynn, Judge Ent Credit Union, Plaintiff-Appellee, v. Sayre & Harris Law, P.L.L.C., a dissolved Colorado limited liability company, Defendant-Appellant. JUDGMENT AFFIRMED Division II Opinion by JUDGE FOX Grove and Sullivan, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 1, 2024 Brown Dunning Walker Fein Drusch PC, Neal K. Dunning, Greenwood Village, Colorado, for Plaintiff-Appellee Coleman, Quigley & Foster, LLC, Joseph Coleman, Isaiah Quigley, Stuart R. Foster, Grand Junction, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Sayre & Harris Law, P.L.L.C. (Sayre & Harris), appeals the district court’s grant of summary judgment in favor of plaintiff, Ent Credit Union (Ent). We affirm. I. Background ¶ 2 Ent is a state-wide credit union based in El Paso County. Sayre & Harris, a dissolved limited liability company, was formerly a law firm in Grand Junction. This case concerns Ent’s efforts to collect an overdraft from Sayre & Harris’ COLTAF
1 business checking account. ¶ 3 Sayre & Harris opened a COLTAF account with Ent in March 2021. That December, Sayre & Harris fell victim to an email scam. The firm was contacted by a prospective “client” seeking counsel to draft a purchase and sale agreement with a hospital for the sale of respiratory ventilators. Given the national importance of respiratory ventilators during the COVID-19 pandemic, Sayre & Harris treated the transaction with great urgency. The client wrote 1 The Colorado Lawyer Trust Account Foundation (COLTAF) administers Colorado’s Interest on Lawyers’ Trust Accounts program, whereby interest on lawyers’ trust accounts holding nominal funds or funds expected to be held for a short time is used to support charitable causes. See Colo. RPC 1.15B. 
2 Sayre & Harris a cashier’s check for $153,550 with instructions that the firm wire $115,750 of the funds to an “inspection company” so the ventilators could be inspected before the sale. ¶ 4 Sayre & Harris deposited the cashier’s check into its COLTAF account with Ent. Ent granted provisional credit of $153,550 to the account the next business day. Believing that Ent’s provisional credit meant that the cashier’s check cleared, Sayre & Harris directed Ent to issue a wire transfer of $115,750 from its COLTAF account to a bank account in New York (which supposedly belonged to the ventilator inspection company). The cashier’s check was later deemed fraudulent, but not before Sayre & Harris’ wire transfer was deposited to a bank account in Nigeria where it could not be recovered. ¶ 5 Before initiating the wire transfer, a Sayre & Harris partner called the bank that purportedly issued the cashier’s check to verify its legitimacy. But by the time the issuing bank returned the partner’s call to inform him that the cashier’s check was fraudulent, he had already initiated the wire transfer from Ent to the New York account. By the time the partner notified Ent that the cashier’s check was a counterfeit, the fraudsters had wired the funds from 
3 the New York account to the Nigerian account. An Ent employee described doing “everything we could” to recall Sayre & Harris’ wire, but the Nigerian bank did not answer. ¶ 6 When the bank that purportedly issued the cashier’s check formally dishonored it, Ent alerted the partner, though he already knew the check was fraudulent. The scam left Sayre & Harris with a $114,540.14 overdraft in its COLTAF account. Unable to pay the negative balance, the firm closed its account and was later dissolved. ¶ 7 Ent sued Sayre & Harris for breach of contract, unjust enrichment, and breach of transfer warranties under section 4-4-
207(a), C.R.S. 2023. It sought the overdraft amount of $114,540.14 plus interest and attorney fees and costs. Sayre & Harris asserted several affirmative defenses, including failure to mitigate damages. ¶ 8 Ent moved for summary judgment, arguing that Sayre & Harris’ membership agreement with Ent placed the risk of loss of provisional credit on the firm, so it owed the credit union for the overdraft. Sayre & Harris argued that two factual disputes precluded summary judgment: (1) whether Ent acted reasonably and with ordinary care in processing the cashier’s check, as is 
4 required by the membership agreement; and (2) whether Ent timely discovered and alerted Sayre & Harris to the counterfeit check. Citing nonbinding authority, Sayre & Harris argued that Ent was required to have reasonable procedures in place to detect a counterfeit check. ¶ 9 Adopting a proposed summary judgment order drafted by Ent, the district court granted its motion for summary judgment. II. Discussion A. Standard of Review ¶ 10 Summary judgment is appropriate when the pleadings and supporting documents demonstrate there is “no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” C.R.C.P. 56(c); see also Nat. Energy Res. Co. v. Upper Gunnison River Water Conservancy Dist., 142 P.3d 1265, 1276 (Colo. 2006). A material fact is one that affects the outcome of the case. Han Ye Lee v. Colo. Times, Inc., 222 P.3d 957, 960 (Colo. App. 2009). “In determining the existence of an issue of material fact, a court must view the evidence in the light most favorable to the nonmoving party.” Id. 
5 ¶ 11 “The moving party bears the initial burden of showing no genuine issue of material fact exists; the burden then shifts to the nonmoving party to establish a triable issue of fact.” Westin Operator, LLC v. Groh, 2015 CO 25, ¶ 20. The nonmoving party may not rest on the allegations made in the pleadings and must provide facts “by affidavit or otherwise” to show there is a triable issue. Han Ye Lee, 222 P.3d at 960; see C.R.C.P. 56(e). ¶ 12 Summary judgment is a “drastic” remedy and may only be granted where there is a “clear showing that the controlling standards have been met.” Westin, ¶ 21 (citation omitted). We review a district court’s grant of summary judgment de novo. Id. at ¶ 19. B. Applicable Law and Ent’s Membership Agreement ¶ 13 “[A] deposit of money becomes available for withdrawal as of right at the opening of the bank’s next banking day after receipt of the deposit.” § 4-4-215(f), C.R.S. 2023. But a check’s depositor remains the “owner” of the check until final settlement (as here, when the check clears). § 4-4-201(a), C.R.S. 2023. The collecting bank acts as the depositor’s agent until the payor bank settles the check; thus, the risk of loss remains with the depositor until the 
6 check clears. Lamson v. Com. Credit Corp., 187 Colo. 382, 386-87, 531 P.2d 966, 969 (1975); Mercantile Bank & Tr. Co. v. Hunter, 31 Colo. App. 200, 202, 501 P.2d 486, 487 (1972). ¶ 14 Until final settlement from the payor bank, any credit given from the collecting bank to the depositor is provisional. § 4-4-201. A collecting bank retains a security interest in the value of the deposited item for which it grants provisional credit, which is realized when the collecting bank receives final settlement from the payor bank. § 4-4-210(a), (c), C.R.S. 2023. When a collecting bank makes a provisional settlement for an item for its depositor, but it fails to receive final settlement from the payor bank, the collecting bank may revoke the provisional settlement and obtain a refund from the depositor. Mercantile, 501 P.2d at 487. ¶ 15 A collecting bank must exercise ordinary care in sending notice of dishonor from a payor bank. § 4-4-202(a)(2), C.R.S. 2023. It does so by giving notice of dishonor to the depositor before its midnight deadline following its receipt. § 4-4-202(b). ¶ 16 If a collecting bank has given provisional credit to its customer for a deposited check, but the payor bank dishonors the check, the collecting bank may 
7 revoke the settlement given by it, charge-back the amount of any credit given for the item to its customer’s account, or obtain refund from its customer . . . if, by its midnight deadline or within a longer reasonable time after it learns the facts, it . . . sends notification of the facts. § 4-4-214(a), C.R.S. 2023; see also Flatiron Linen, Inc. v. First Am. State Bank, 1 P.3d 244, 250 (Colo. App. 1999), rev’d on other grounds, 23 P.3d 1209 (Colo. 2001). If the collecting bank delays giving its customer the requisite notice beyond its midnight deadline or a longer reasonable time, the bank may “revoke the settlement, charge back the credit, or obtain refund from its customer, but it is liable for any loss resulting from the delay.” § 4-
4-214(a). ¶ 17 While a financial institution cannot disclaim its duty of good faith and ordinary care, parties may, by contract, set the standards by which the bank’s responsibility is to be measured, so long as those standards are not manifestly unreasonable. § 4-4-103(a), C.R.S. 2023. ¶ 18 Ent’s membership agreement, which Sayre & Harris signed, mirrored the foregoing legal principles. It provided: 
8 • “We act only as your agent in handling your deposits and assume no responsibility beyond the exercise of ordinary care.” • “All items . . . credited to your account are provisional and subject to our receipt of final payment.” • “If final payment is not received, we reserve the right to charge your account for the amount of such items.” • “We shall have the right to charge back against your account all previously deposited items . . . endorsed by you that are returned to us unpaid, regardless of whether the amount of the item has been available for your use.” • “Amounts may be provisionally credited to your account until we receive final payment.” • “You waive any notice of nonpayment, dishonor or protest regarding any items purchased or received by us for credit to your account.” • “We will not be liable if . . . your loss is caused by your negligence.” 
9 The agreement also provided that Ent may only allow a withdrawal when the customer has “sufficient funds in [its] available balance to cover the entire amount of the withdrawal.” ¶ 19 As to stop payment orders, the agreement stated that a customer may ask Ent to “stop payment on any check” drawn upon its account, but the stop payment order is only effective if received in time for Ent to act upon it. It further provided, “If the stop payment order is not received in time for us to act upon the order, we will not be liable for failing to stop payment on the check.” ¶ 20 As to wire transfers, the agreement provided, We may provisionally credit your account for [a wire] transfer before we receive final settlement for the transfer. You understand and agree that if we do not receive final settlement for [a wire] transfer, we may reverse the provisional credit to your account or you will refund the amount to us. C. Summary Judgment was Proper ¶ 21 Sayre & Harris argues that genuine disputes of material fact existed as to whether (1) Ent acted reasonably and with ordinary care in processing the cashier’s check; (2) Ent timely discovered and alerted Sayre & Harris to the counterfeit check, thus mitigating damages; and (3) Ent complied with the procedural requirements of 
10 its alternative breach of transfer warranties claim. We address and reject each argument in turn. ¶ 22 First, Sayre & Harris argues that a genuine dispute of material fact existed as to whether Ent acted reasonably and with ordinary care in processing the cashier’s check and detecting fraud. But Sayre & Harris fail to direct us to any binding authority or contractual provision imposing that duty on Ent. Sayre & Harris cites section 4-4-214(a), which provides that banks are liable for losses resulting from their delay in notifying a customer of a dishonored check. But Sayre & Harris knew the cashier’s check was fraudulent and informed Ent of the fraud even before it was formally dishonored. Sayre & Harris fails to explain how, given this advance knowledge and that it informed Ent of the fraudulent check, its “loss result[ed] from” Ent’s alleged delay in notifying it once the payor bank formally dishonored the cashier’s check. § 4-
4-214(a). ¶ 23 Sayre & Harris also invokes the portion of the membership agreement providing that Ent would only permit withdrawals if the firm had sufficient funds in its account. But the firm ignores provisions in the same contract notifying it that Ent would grant 
11 provisional credit for deposited checks, which created a sufficient balance to support the withdrawal. The risk of loss of that provisional credit stayed with the firm until the check cleared. Lamson, 531 P.2d at 969; Mercantile, 501 P.2d at 487. Because no legal or contractual provision imposed upon Ent the duty that Sayre & Harris claims it violated, its asserted genuine dispute of material fact did not preclude summary judgment. See Sarrouf L. LLP v. First Republic Bank, 148 N.E.3d 1243, 1253 (Mass. App. Ct. 2020) (law firm victimized by an identical email scam was unsuccessful in presenting a genuine dispute of material fact as to the bank’s failure to detect that the check was counterfeit because the bank had no legal or contractual duty to do so). ¶ 24 Second, Sayre & Harris argues that a genuine dispute of material fact existed as to whether Ent timely discovered and alerted the firm to the counterfeit check. Again, the firm fails to establish that Ent had such a duty. Even so, the undisputed facts establish that a partner at the firm learned that the cashier’s check was a counterfeit one day after initiating the wire transfer and immediately contacted Ent to inform it of the fraudulent cashier’s check. But the partner’s efforts were too little too late; Ent was 
12 unable to recall the wire despite doing “everything [it] could.” Ent again contacted the partner when it learned that the issuing bank formally dishonored the cashier’s check, though he was already aware that the check was fraudulent. ¶ 25 To support its timing argument, Sayre & Harris claims that the affidavit attached to its opposition to Ent’s summary judgment motion created a genuine dispute of material fact as to Ent’s failure to mitigate damages. We disagree. In the affidavit, the partner claimed that Ent did not notify him that something “went wrong with the wire” until “21 days after the wire had been initiated,” preventing him from stopping it in time. But the affidavit itself contradicts that assertion. Elsewhere, the partner admitted that he contacted Ent the day after the wire transfer to inform it that the check was counterfeit. Thus, we are unpersuaded that the affidavit created a genuine dispute of material fact as to Ent’s failure to mitigate damages. See Markus v. Brohl, 2014 COA 146, ¶ 50 (To avoid summary judgment, the evidence presented must be “sufficient to demonstrate that a reasonable jury could return a verdict for the non-moving party.”) (citation omitted); see also 
13 Raygor v. Bd. of Cnty. Comm’rs, 21 P.3d 432, 437 (Colo. App. 2000) (conclusory affidavits do not create genuine issues of material fact). ¶ 26 Third, Sayre & Harris contends — with respect to Ent’s alternative claim for breach of transfer warranties claim — that Ent was required and failed to put Sayre & Harris on notice of the claim within thirty days of discovering the breach. § 4-4-207(d). Because Ent was entitled to the relief it sought under its breach of contract theory, the district court was not required to address the alternative theory for relief, and whether the procedural requirements underpinning that claim were satisfied. ¶ 27 Because there was no genuine dispute of material fact, the district court properly granted Ent’s motion for summary judgment. See C.R.C.P. 56(c). III. Disposition ¶ 28 The judgment is affirmed. JUDGE GROVE and JUDGE SULLIVAN concur.